## THE COOS BAY WAGON CO. *v.* CROCKER.

*(Circuit Court, D. Oregon.* November 22, 1880.)

1. VENDOR'S LIEN.—Upon the sale of real property on credit, without collateral security, the vendor has a lien upon the same for the unpaid purchase money, unless it was waived by the express agreement of the parties ; and such lien exists and may be enforced against all persons claiming under the vendee with notice that the purchase money is unpaid.

2. ASSIGNMENT.—The assignment and acceptance of a contract for the sale of real property does not make the assignee personally liable for the purchase money due thereon ; and, as against him, the vendor's remedy is confined to the enforcement of his lien on the property.

3. CONTRACT—ENTIRE OR SEVERABLE.--Whether a contract is entire or severable, depends upon the intention of the parties, to be gathered from the circumstances of the case.

4. SAME.—A contract to sell 96,000 acres of wild land, of different grades and values, lying substantially in a body, at an average price of one dollar per acre, to be conveyed and paid for as and when the same is surveyed and patented to the grantee by the United States, is not as many distinct contracts as there may be conveyances and payments in pursuance thereof, but only one entire contract, and therefore the vendor's lien for any portion of the purchase money thereof remaining unpaid extends to and may be enforced against the whole tract.

In Equity.

*Rufus Mallory* and *W. R. Willis,* for plaintiff.

*William R. Strong,* for defendant.

DEADY, D. J.   On March 3, 1869, congress passed an act granting "to the state of Oregon, to aid in the construction of a military wagon road from the navigable waters of Coos Bay to Roseburg, in said state," the alternate sections of the public land, not exceeding six sections in width on each side of said road, (15 St. 340;) and on October 22, 1870, the legislative assembly of Oregon passed an act granting the Coos bay Wagon Road Company "all lands, rights of way," etc., so granted to the state, "for the purpose of aiding said company in constructing the road mentioned in said act of congress, and upon the conditions and limitations therein prescribed." Sess. Laws, 40.

On January 1, 1875, the plaintiff was duly incorporated under the laws of Oregon, and on May 31st of the same year had constructed said road, and thereby become entitled under said grant to 95,345.12 acres of said public lands, and had received a patent from the United States for 35,553.59 acres thereof, and was entitled to a patent for the remaining 60,791.53 acres as soon as it was conveyed.

On the same date an agreement was made between the plaintiff, sundry persons who were the stockholders of said corporation, and John Miller for the sale and assignment to the latter of all the stock thereof, and the sale and conveyance of the land and road aforesaid, whether patented or unpatented, less 7,939.94 acres theretofore sold to settlers thereon, for the consideration of one dollar per acre, to be paid as and when the same was duly assigned and conveyed as therein provided; and on the same day said stockholders duly transferred the stock of said corporation to T. B. Benchly, in trust for said Miller, as by said agreement was provided, and the plaintiff duly delivered to him the possession of said road, and conveyed to him the lands for which it had then received a patent, less 6,539.94 acres thereof already sold to settlers thereon, and received therefor from said Miller one dollar per acre, or, in the aggregate, $29,013.63.

Before the patents were received for the remainder of the lands Miller became insolvent, and was largely indebted to the defendant and Leland Stanford, C. P. Huntington, and Mark Hopkins for money received of them and not accounted for.

On account of this indebtedness, Miller, on June 21, 1875, conveyed the lands theretofore conveyed to him by the plaintiff to the defendant and his associates aforesaid, and on August 18th of the same year, jointly with his wife, and in his true name, A. R. Woodroof, again conveyed the same premises to said defendant and associates; and in like manner, and for the same purpose, conveyed to the same parties the said road; and on July 1, 1875, duly assigned said agreement of May 31, 1875, for the sale and purchase of said corporation lands to the defendant.

In the spring of 1876 the plaintiff caused a letter to be written and sent to the defendant, stating the fact that certain occupants of portions of the then unpatented lands bargained and sold to Miller as aforesaid were willing to relinquish their rights as pre-emptors under the laws of the United States, and purchase from the grantee thereof, and asking for instructions in the premises. The defendant replied, under date of April 5, 1876, "for self and associates,"—Stanford, Huntington, and Hopkins aforesaid, who, together, constituted "The Western Development Company,"—stating that "the owners of the land grant of said company do not desire to have any contest with any *bona fide* settler who settled upon the land which was granted to said company before the passage of the act of congress, and was entitled to a pre-emption thereon," and authorized the plaintiff to convey to such settlers the lands occupied by them, upon the payment of $1.25 per acre,—the one dollar to go to the plaintiff and the one-quarter to the defendant and his associates,—and also authorizing the plaintiff "to make contracts with such settlers upon all unpatented land, and carry them into effect by deed prior to deeds to be made under our contract to purchase, or we will make deeds when deeded to us, not to exceed 1,000 acres; the proof of such settlement to be sent to me before the adjustment is made."

In pursuance of this instruction the plaintiff sold and conveyed 240 acres of the unpatented lands to settlers thereon for $1.25 per acre, and on October 14, 1876, paid $60 of the proceeds to the Western Developement Company, and retained $240 thereof for itself. At the date of the conveyances and assignment aforesaid, made by Miller prior to August, 1875, he was held in confinement, by the defendant and his associates aforesaid, upon the charge of embezzlement while in their employ. Afterwards, it was ascertained that Miller's real name was Woodroof, and that he had a wife in Virginia, whereupon the deeds aforesaid to the premises, dated in August, were executed by him, jointly with his wife, in his true name.

On January 19, 1877, the defendant re-assigned said agree-

ment of May 31, 1875, for the sale and purchase of said land grant to said John Miller, and agreed, in writing, to sell and convey to him all of said lands theretofore conveyed by said Miller to him or his associates, upon Miller's paying therefor the sum of $1.25 per acre, and expenses incurred thereabout, together with interest upon the purchase money, within 90 days, after which the option of Miller was to cease and determine. This assignment and option, although nominally made to Miller, was intended for the benefit of A. T. Green and H. S. Brown as well, and was in fact an arrangement by which they three were authorized to dispose of this land grant at a profit to themselves, if they could, within 90 days—failing in which, the option and assignment were to become null and void.

By November 8, 1876, the remaining portion of the grant was surveyed and patented to the plaintiff, and on May 5, 1877, it executed a deed in due form of law therefor to the defendant, and duly tendered the same to him on July 27, 1877, and demanded payment therefor, which was refused on the ground that he had re-assigned the contract to Miller. The portion of the grant conveyed to Miller, and by him conveyed to the defendant, is of much more value, probably 50 per cent. more, than the remainder of it. During all the time of these transactions the defendant, and his associates aforesaid, were citizens of California and not resident in Oregon, and were never in the possession or control of the premises, otherwise than according to the foregoing statement of facts, and their legal operation and effect.

Under these circumstances the plaintiff commenced this suit in the circuit court for the county of Coos to recover from the defendant the sum of $60,791.53, alleged to be due on the contract of May 31, 1875, and to establish and enforce a vendor's lien upon the whole premises for said sum and the costs of suit, which was afterwards removed by the defendant into this court.

It is alleged in the amended bill that the defendant, by reason of the premises, undertook and promised to keep and perform all the covenants in the agreement of March 31,

1875, to be performed by Miller; and upon the hearing evidence was given tending to prove that the defendant, at and immediately before the conveyance and assignment to him by Miller, and in consideration thereof, expressly undertook and promised to do so. But, in my judgment, it is not sufficient to establish that fact. But the evidence satisfactorily proves that the defendant, either in person, or by his agents and attorneys, at and before such conveyance and assignment, had full notice of the contract of May 31, 1875, between Miller and the plaintiff, and the respective obligations and liabilities of the parties thereto.

Having concluded that, as a matter of fact, the defendant did not undertake to perform Miller's contract with the plaintiff, it is unnecessary to consider whether such an undertaking is required by the statute of frauds to be in writing, as set up in the defendant's answer. But the plaintiff claims that the defendant is estopped to deny that he did so undertake and promise, on account of his letter of April 5, 1876, to the plaintiff, by which it appears he assumed to be the assignee of Miller as to this land grant, whether patented or unpatented, and particularly the latter. But there are no elements of an estoppel in this transaction. The plaintiff was neither deceived nor injured by what the defendant said or did in this respect; nor was it thereby or otherwise induced to take any action upon or change its relation to the subject-matter, and without those circumstances there can be no estoppel. *Wythe* v. *Smith*, 4 Saw. 24; *Wythe* v. *Salem*, Id. 88. But the transaction, of which this letter is the principal item, is very satisfactory proof that the defendant had become the assignee of Miller, and accepted his assignment of the contract with the plaintiff for the sale and purchase of this land grant. His declarations in this connection are utterly inconsistent with any other theory than that he so regarded himself; and certainly his conduct amounts to a direct assertion to that effect. In this letter to the plaintiff the defendant assumes to be entitled to the control of the land—patented and unpatented —and directs the terms of settlement to be made with the occupants upon the unpatented portion—not exceeding 1,000

acres thereof—and requires the proof of the facts "to be sent to me [him] before the adjustment is made." He also directed that the proceeds of the sale should be first applied to the payment of the plaintiff, as provided in the contract of sale, and that the remainder should be paid to himself and associates, which was done without, so far as appears, any comment or dissent on his part.

It is admitted that on July 1, 1875, Miller assigned the contract of sale and purchase to the defendant, but it is claimed that the assignment was made without the defendant's knowledge or acceptance, and therefore he is not affected by it. But, from these facts, the only reasonable conclusion is that the defendant was well aware of the assignment, and knowingly asserted his rights under it—that he was the assignee of Miller in fact as well as form. Upon this state of facts the plaintiff claims a vendor's lien as against the defendant upon the whole premises for the unpaid purchase money. It is admitted by the defendant that the plaintiff has such a lien, so far as the lands unconveyed to Miller are concerned; but he denies that it extends to the lands conveyed to Miller, and by the latter to himself and associates. This denial is based upon two grounds: *First,* that it was not the intention of the parties to the contract that any such lien should be reserved as against said lands; and, *second,* that the contract of sale was not an entirety, but separable into two distinct parts or contracts, to-wit: A contract to sell the lands conveyed to Miller, and also a contract to sell the unpatented land, the same to be conveyed and paid for when and as fast as the same was surveyed and patented to the plaintiff.

Upon the sale of real property on credit, without collateral security, equity raises a lien thereon in favor of the vendor as a security for the unpaid purchase money; and this lien exists whether the property is conveyed to the purchaser or not. The vendee is considered the trustee of the vendor in respect to the purchase money until it is paid; and this lien continues and holds good against all subsequent purchasers with notice that the purchase money is unpaid. *Mackreth* v. *Symmons,* 15 Ves. 329; *Bayley* v. *Greenleaf,* 7 Wheat. 49;

*Chillou* v. *Braiden's Adm'x*, 2 Black, 460; *Lewis* v. *Hawkins*, 23 Wall. 125; *Gilman* v. *Brown*, 1 Mass. 212; *Pease* v. *Kelly*, 3 Oregon, 417; *Baum* v. *Grigsby*, 21 Cal. 175; *Garson* v. *Green*, 1 John. Ch. 308; *Champion* v. *Brown*, 6 John. Ch. 402; 1 Wash. 502–4; Adams' Equity, 126–9; Story's Eq. Jur. § 1217 *et seq.;* 4 Kent, 151–4. As to the intention of the parties concerning this lien, it is to be considered that the lien is a natural equity, and arises and exists independently of their agreement. Neither is it waived or relinquished unless by an express agreement to that effect, or conduct plainly inconsistent with an intention to retain it, as by taking a mortgage on the premises, or a distinct and independent security for the purchase money; and the burden of proof is upon the purchaser to show that the lien has been waived or relinquished. 1 Lead. Cas. Eq. n. *Mackreth* v. *Symmons, supra,* 364; *Gilman* v. *Brown, supra,* 213; 4 Kent. 152.

In this case no security of any kind was taken for the payment of the unpaid purchase money; nor is there anything in the circumstances of the case to even suggest that there was any understanding or agreement between the parties to the sale to waive the vendor's lien. It is not enough to say that the thought of the lien, as a security for the payment of the purchase money, was not in the minds of the parties at the time of sale; for it is in just such cases that equity, as a means of doing justice between the vendor and vendee, or the assignees of the latter, with notice, creates and enforces this lien. And, therefore, whenever the vendee or assignee seeks to hold property free from this lien, he must show that it was intentionally relinquished by the vendor.

As to whether the contract of sale was an entirety or not, the contention of the defendant is that the sale of the unpatented lands was made by a distinct and separate contract from that of the patented ones, and therefore there can be no lien upon the latter for the purchase money due on the sale of the former. If the premise is correct the conclusion follows of course.

In 2 Parsons on Cont. 517, it is said that "any contract may consist of many parts; and these may be considered as

parts of one whole, or as so many distinct contracts, entered into at one time, and expressed in the same instrument, but not thereby made one contract. No precise rule can be given by which this question in a given case may be settled. Like most other questions of construction, it depends upon the intention of the parties, and this must be discovered in each case by considering the language employed and the subject-matter of the contract. If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable. * * * But the mere fact that the subject of the contract is sold by weight or measure, and the value is ascertained by the price affixed to each pound or yard or bushel of the quantity contracted for, will not be sufficient to render the contract severable."

In *Miner* v. *Bradley*, 22 Pick, 457, it was held that a sale at auction of a cow and lot of hay, at one bid, for $17, was an entire contract; the court saying that, "as the cow and the hay were bought together for one gross sum, there are no means of ascertaining how much was intended for the one and how much for the other."

In *Johnson* v. *Johnson*, 3 Bos. & Pul. 162, the plaintiff purchased two separate parcels of real property, the one for £300 and the other for £700—each being distinctly valued—and took one conveyance of both. The title to one of the parcels proving invalid he brought an action to recover the consideration thereof, and prevailed; the court, *per* Lord Alvanley, saying: "If the question were how far the part of which the title has failed formed an essential ingredient of the bargain, the grossest injustice would ensue if a party were suffered to say he would retain all of which the title was good and recover a proportionable part of the purchase money for the rest. Possibly the part which he retains might not have been sold unless the other part had been taken at the same time, and ought not to be valued in proportion to its extent, but according to the various circumstances connected with it. * * * In this case, however, no such question arises; for it

appears to me, although both pieces of ground were bargained for at the same time, we must consider the bargain as consisting of two distinct contracts; and that the one part was sold for £300 and the other for £700."

In *Clark* v. *Baker*, 5 Met. 452, a contract to sell a cargo of yellow and white corn—the quantity being unknown—on board the schooner of the seller, at a certain price per bushel for the yellow and another for the white corn, was held to be an entire one for the cargo, and not any number of contracts for each kind of corn or separate bushel. In the course of the opinion the court says: "If the contract is entire, if it is one bargain, then it matters not whether there is one or many articles, and though each may have an appropriate price."

In *Davis* v. *Maxwell*, 12 Met. 286, it was held that a contract to work "for seven months at $12 per month" was an entire one, and not seven separate contracts to work seven distinct months for seven distinct $12. The court said: "It is one bargain; performance on one part and payment on the other; and not part performance and full payment for the part performed."

According to these authorities, as well as the nature of the case, this transaction was a single and entire contract for the sale of this land as a whole. Indeed, it is difficult to conceive of it in any other light. Briefly stated, a land grant consisting of alternate sections within six miles on either side of a road, about 50 miles long, and running from tidewater on Coos bay across the coast range to Roseburg, and containing about 96,000 acres of wild land, varying in value per acre from nothing indefinitely upwards, was sold in a body for one dollar per acre, by a single written agreement. By the terms of this agreement the land was to be conveyed to the vendee as fast as it was surveyed and patented, and the portion already patented as soon as he could examine the patent and was satisfied with the title—the payments to be made as the conveyances were.

There is nothing in the situation or condition of the subject-matter or the parties that in any way indicates that this contract was not single and entire. It was one bargain, and

the land, although valued by the acre and not absolutely contiguous legal subdivisions, was practically one body—the land grant of the Coos Bay Wagon Road Company. Neither is it to be supposed that the plaintiff would sell the patented part of this grant, which the proof shows, and the court almost judicially knows, was worth much more than the remaining portion, separately, for the same price per acre as the other.

Most certainly the price was an average one for the whole grant, and the sale an entirety. And, as was said in *Johnson* v. *Johnson, supra,* in the consideration of a similar question, "the grossest injustice would ensue" if the defendant was suffered to retain the better part free from the vendor's lien for the price of the poorer part, upon the arbitrary assumption that the sale was made by two separate contracts. Nothing incapable of mathematical demonstration is more certain than that the parties to this transaction never contemplated that this otherwise single and entire contract of sale was resolved into a number of distinct and separate ones, simply because it was therein provided that the conveyance should be made from time to time as fast as the land was surveyed and patented.

The agreement on the part of the stockholders of the road to transfer the stock to Benchley, as trustee for Miller, to be held by him as such trustee until the final payment was made on the land, was duly performed; but this was not intended as a security for the payment of the purchase money, but rather a security or provision for the custody of the stock during the pendency of the transaction and its delivery upon the final completion thereof.

But this stock, and the road which it represents, are not shown to have any appreciable value; and from this, and the very nature of the case, the reasonable inference is that its value at most is merely nominal. The formation of the company and the construction of the road were the means or device by which the land grant was obtained from the state, and thereafter, I apprehend, neither was of any benefit to any one save the public. Evidently, the stock was a mere nominal and formal part of the transaction, and did not, in

any appreciable degree, affect the amount of the consideration therefor.

Nor should it be forgotten that the justice of this case, as well as the law, is with the plaintiff. The defendant obtained his conveyance and assignment from Miller without advancing anything therefor, the consideration being merely a pre-existing debt, and that of no probable value. And although he is not personally liable on Miller's contract, yet, having accepted a conveyance and assignment from him of the sub-ject-matter thereof,—with notice of the fact that a portion of the purchase money was unpaid, whereby he became the legal owner of an undivided one-fourth of one portion of the property, and the equitable owner of the whole of the remainder,—he is justly liable for such purchase money to the extent of such ownership.

By virtue of its lien upon the premises the plaintiff is entitled to call upon the defendant, as the assignee of Miller, to pay the remainder of the purchase money according to the terms of the contract, or submit to have his interest in the premises sold, and the proceeds applied to the satisfaction thereof. *Champion* v. *Brown, supra*, 402.

A decree will be entered for the plaintiff accordingly.