SIEGEL, COOPER & CO.

*v.*

THE EATON & PRINCE COMPANY.

</div>

*Filed at Ottawa November 9, 1896—Rehearing denied March 12, 1897.*

1. CONTRACTS—*destruction of subject matter of contract excuses performance.* Where a contract is entered into with reference to the existence of a particular thing, which is destroyed before the time for the performance of the contract without fault of either party, both are excused, but neither is entitled to recover for a part performance thereof.

2. SAME—*contract which apportions payments to different parts of work is severable.* A contract is generally severable which clearly apportions the payment to different parts of the work, although the work may be, in its nature, single and entire.

3. SAME—*when contractor may recover for part performance.* A contract for placing an elevator in a building, which provides that one-half of the payment shall be made when the engine is on its foundation and final payment on completion of the work, is severable, and if the building is destroyed by fire after the engine is on the foundation the contractor may recover the part payment so agreed to be made.

PHILLIPS and CARTWRIGHT, JJ., dissenting.

*Siegel, Cooper & Co.* v. *Eaton & Prince Co.* 60 Ill. App. 639, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

This is an action by appellee, against appellant, begun in the circuit court of Cook county, to recover money due appellee under a contract to construct an elevator in a building belonging to appellant, which was destroyed during the progress of the work. The whole contract price was $2500, payable as the work progressed, as follows: One-half when engine is on foundation, and final payment to be due and payable when the elevator is put up in good running order. The first count of the declaration, which is in assumpsit, sets up the contract, and alleges that the engine mentioned therein was on the foundation prior to the fire, and claims a right to recover $1250 by the terms of the contract. The second count also sets up the contract, and alleges the performance of work and furnishing of materials by plaintiff of the value of $2000, when, without its fault, the building was destroyed. The plea is the general issue.

The cause was tried on the following stipulation: "It is hereby stipulated and agreed that the plaintiff and defendant entered into the contract hereto annexed on the first day of June, 1891; that under the said contract

the plaintiff, on the first day of August, 1891, had the engine mentioned therein on its foundation, but not leveled nor fastened to said foundation, and had prepared material and done labor under said contract to the total value of $1390; that neither the cabs, the cage, nor the cable for the same, was on said premises at the time the premises of Siegel, Cooper & Co. were destroyed by fire; that the engine had been placed on the foundation, as aforesaid, about six o'clock on Saturday afternoon, August 1, 1891; that fire destroyed the premises of Siegel, Cooper & Co., in which said elevator and machinery therefor, under said contract, were to be placed, and broke out about 7:30 o'clock on Monday morning, August 3, 1891; that all work to be done under the contract had not been performed when the premises were destroyed by fire; that the premises were destroyed by fire without the fault of either party to the contract, and nothing had been paid to the Eaton & Prince Company by Siegel, Cooper & Co. under or upon the said contract; that defendant had the hatchways ready for the elevator work on July 10, 1891, and plaintiff had the uninterrupted use of the hatchways on and after said date. It is further stipulated that the jury in this case shall be waived, and the same submitted to the court for trial without a jury."

The following is the contract between the parties:

"*Siegel, Cooper & Co.:*          "Chicago, Ill., *May 16, 1891.*

"We hereby propose to furnish and erect in your store, at State and Adams streets, one of our improved worm-geared steam passenger elevators. * * * This engine will be set on a substantial stone foundation, at the top of which will be placed a cut cap-stone, and the whole firmly secured with heavy iron anchor-bolts from bottom of foundation to bed-plate of engine. * * * Every part of the elevator and appliances will be put up in a neat, substantial and workmanlike manner, and is guaranteed to be free from all defects in material or workmanship, and should any appear in a reasonable time we will make such defects good at our own expense. You are to prepare and enclose the hatchways and to prepare a place for the

engine; to do all cutting of the walls and masonry; to furnish proper supports in place for guide-posts and sheave-beams, and do all painting.  Should the roof be too low to allow the cage to travel to the top landing, it may be necessary to put the sheaves and sheave-beams on the roof.  In that case you are to protect them.  The hatchways are to be ready for the elevator work by the 10th day of July, 1891.  After that date we are to have the uninterrupted use of them.  The whole apparatus will be put up in complete running order, ready for steam connections, by the 15th day of August, 1891, for the sum of $2500, payments to be made as the work progresses, as follows: One-half when engine is on foundation, and final payment to be due and payable when the elevator is put up in good running order.  Should any delay in the shipping or erecting of the elevator be occasioned by the purchaser, then the last payment shall be considered due on the date named for completion. Should any delay caused by you occur in the erecting after the men and material are at the building, or after the erecting is accomplished ready for steam and exhaust connection, then you are to pay for time and expenses of men caused by such delay.

"Respectfully submitted.

EATON & PRINCE Co.
*F. H. P.*

"We hereby accept the above proposal, and agree to all its conditions and terms of payment therein contained.
"June 1, 1891.                    SIEGEL, COOPER & CO."

The plaintiff recovered judgment for $1390,—the full value of material furnished and labor done.  That judgment has been affirmed by the Appellate Court.

The trial court held the following propositions in the decision of the case:

"The court holds, as a matter of law, that if the plaintiff made and entered into the contract in evidence with the defendant for the construction of an elevator and appurtenances, as set forth in said contract; that work under said contract had so far progressed that the engine thereof had been placed upon its foundation, and that afterwards, and without fault on the part of the plaintiff, the building in which the said elevator, with its appurtenances, etc., was to be placed or constructed, was, on or about August 1, 1891, destroyed by fire, then the plaintiff

was excused from further compliance with said contract, and is entitled to recover of and from the defendant the sum of $1250, with interest thereon at the rate of five per cent per annum from said August 1, 1891."

"And the court further holds, that if the plaintiff set about the performance of said contract and prepared material and machinery in accordance with the terms of said contract, and delivered a part thereof to the building in which said elevator and its appurtenances was to be constructed or built, and that afterwards, and on or about the first day of August, 1891, the said building in which said elevator was being constructed was destroyed by fire without the fault of the plaintiff, then, as a matter of law, the plaintiff is entitled to recover of and from the defendant the full value, to be determined by the evidence or stipulation of the parties, of all work done and material prepared and delivered to said building, pursuant to said contract, prior to the happening of the fire."

A. BINSWANGER, for appellant.

FLOWER, SMITH & MUSGRAVE, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

It is insisted that the court erred in holding the propositions set forth in the statement and in refusing counter propositions asked by appellant, its contention being that the contract is an entire one, and, the building in which the elevator was to be placed having been destroyed by fire before the time for final payment, without any fault of either party, no recovery for the work done or materials furnished could be had.

As will be seen from the plaintiff's declaration, it proceeded on two theories: First, that the contract was not an entire one, so far as the payments were concerned; and second, even if it was, under the law plaintiff was entitled to recover the value of the work done and materials furnished prior to the destruction of the building.

The judgment is upon this last theory, and is based upon the law as stated in the second of the above propositions.

The theory upon which the second proposition is based is, that under the contract requiring the elevator to be placed in a particular building it was the duty of defendant to furnish and provide that building, and therefore it is liable, even though the destruction was without its fault. The rule of law, as we understand it, is otherwise. Thus, in Addison on Contracts (sec. 554) it is said: "Where a man contracts to expend material and labor on buildings belonging to and in the occupation of the employer, to be paid for on completion of the whole, and before the completion the buildings are destroyed by accidental fire, the contractor is excused from the completion of the work, but is not entitled to any compensation for the work already done, which perished without any fault of the employer." This doctrine is sustained by *Brumby* v. *Smith*, 3 Ala. 123, *Lord* v. *Wheeler*, 1 Gray, 282, and *Gillon* v. *Toudy*, 5 W. N. C. (Pa.) 528. The rule seems to be adduced from the case of *Appleby* v. *Meyers*, L. R. 2 C. P. 651. In that case the action was to recover for a part performance of a contract to furnish and attach to a building of the defendant certain machinery, to be paid for upon the completion of the work. The premises, together with part of plaintiff's materials, were destroyed by fire before the contract was completed. It was held that there was no right of action, the court saying: "We think when, as in the present case, the premises are destroyed without fault on either side, it is a misfortune equally affecting both parties, excusing both from further performance of the contract but giving a cause of action to neither." See Bishop on Contracts, sec. 588.

It is insisted by counsel for appellee, and the decision of the Appellate Court is in conformity with that contention, that a different rule is announced in *Cleary* v. *Sohier*, 120 Mass. 210, and *Rawson* v. *Clark*, 70 Ill. 656. We do not so understand either of these cases. The Massachusetts

case was upon an oral contract to lath and plaster a certain building at a certain price per square yard. "*No agreement was made and nothing was said as to terms or times of payment,* but only that the work was to be done for forty cents per yard." A certain part of the work being done, the building was destroyed without the fault of either party. The amount claimed by plaintiff was $474, the reasonable value of the work done. All that is said by the court in the decision of the case is: "The building having been destroyed by fire without the fault of the plaintiff, so that he could not complete his contract, he may recover under a count for work done and materials furnished,"—citing *Lord* v. *Wheeler, supra,* and *Wells* v. *Colman,* 107 Mass. 514. This in no way conflicts with *Appleby* v. *Meyers, supra,* for it was said in that case: "It is quite true that materials worked by one into the property of another become part of that property. This is equally true whether it be fixed or movable property. Bricks built into a wall become part of the house; thread stitched into a coat which is under repair, or planks and nails and pitch worked into a ship under repair, become part of the coat or the ship; and therefore, generally, and in the absence of something to show a contrary intention, the bricklayer or tailor or shipwright is to be paid for the work and materials he has done and provided, although the whole work is not complete. It is not material whether in such case the non-completion is because the shipwright did not choose to go on with the work, as was the case in *Roberts* v. *Havelock,* or because in consequence of a fire he could not go on with it, as in *Menetone* v. *Athawes.* But, though this is the *prima facie* contract between those who enter into contracts for doing work and supplying materials, there is nothing to render it illegal or absurd in the workman to agree to complete the whole and to be paid when the whole is complete, and not till then, and we think the plaintiffs in the present case had entered into such a contract."

The case of *Rawson* v. *Clark* has no bearing whatever upon this case. There the plaintiff agreed to "manufacture and place in the building" certain iron work for a certain price, eighty-five per cent of which was to be paid on the certificate of the architect as the work progressed, and the balance, fifteen per cent, when the work was completed. The suit was for the iron work which had been manufactured. The evidence showed that the price agreed upon for manufacturing the iron was $206, and for putting it up about $75. Upon the completion of the manufacturing of the iron and the delivery of a small portion of it the defendant notified the plaintiff that the building was not ready for the work, and directed him to send no more until it should be ready, promising to notify him when that time arrived. A week later the building was destroyed by fire. The time required to put up the work would have been about two days, so that it clearly appeared in that case that the plaintiff was prevented from completing the work, not by the destruction of the building by fire, but because the defendant did not have it ready for the work when the plaintiff offered to complete it, and hence we said: "Appellees were no way in default. They were ready and offered to fully perform within the time limited, but were prevented by appellant. The reason of their not entirely completing their contract by placing the iron work in the building was the default of the defendant in not having a building provided for the purpose." This certainly does not mean that they were in default in not having a building because it was finally destroyed by fire, but because the building "was not then ready for the work," etc.

We think the law is, that where a contract is entered into with reference to the existence of a particular thing, and that thing is destroyed before the time for the performance of the contract, without the fault of either party, both parties are excused from performing the contract, but neither is entitled to recover anything for

a part performance thereof. It remains, however, to be determined whether this contract is an entire contract within that rule. It will be seen that by its terms payment was to be made, not upon the completion of the work, but "as the work progresses, as follows: One-half when the engine is on foundation, and final payment to be due and payable when the elevator is put up in good running order," thus clearly providing for payment by installments. Counsel insist, however, that this does not destroy the entirety of the contract, because, they say, the $1250 was a mere arbitrary sum, fixed without reference to the value of the work done at the time designated for its payment, and that the phrase ."when the engine is on foundation," merely named an arbitrary time at which a partial payment should be made, without reference to the value of the work and material furnished at that time, and that the payment of the installment in that manner was merely for the convenience of the contractor and as an evidence of the good faith of Siegel, Cooper & Co. in completing its part of the contract. If all this were true we are unable to see why the contract is not severable, so far as the payments are concerned. But we do not think the contract is fairly susceptible of that construction. The $1250 is not a mere arbitrary sum fixed without reference to the value of the work done at the time of paying the installment. Payment was to be made as the work progressed,—one-half when the engine was on the foundation. The parties here fixed the sum, by agreement, which should be paid when the work had progressed thus far, and presumably with reference to the value of the material and labor then placed in the defendant's building. That it served the convenience of the contractor and evidenced the good faith of the employer in no way affects the case.

Parsons in his work on Contracts, (vol. 2,—6th ed.— sec. 517,) speaking of the entirety of contracts, says: "If the part to be performed by one party consists of several

distinct and separate items, and the price to be paid by
the other is apportioned to each item to be performed or
is left to be implied by law, such a contract will generally
be held to be severable; and the same rule holds where
the price to be paid is clearly and distinctly apportioned
to different parts of what is to be performed, although
the latter is in its nature single and entire." See note *c*
to the same section.

In *Schwartz* v. *Saunders*, 46 Ill. 17, Saunders made a
contract with Schwartz to do the carpenter work and
furnish the material therefor on a brick building being
erected, to be paid for as the work progressed, upon es-
timates to be furnished by the architect. The building
was blown down after an estimate of certain carpenter
work and before the contract was completed, and it was
held that the contractor, under such circumstances, was
justified in abandoning the contract, and entitled to a
mechanic's lien for the work done. It was contended
there, as here, that the destruction of the building ab-
solved both parties and protected the defendant from
any action for the work done, the case of *Appleby* v. *Mey-
ers, supra,* being relied upon to support the contention;
but it was said of the *Appleby case* (p. 23): "This case we
have examined, and from the statement of it it would
appear that the contract was unlike the one between
these parties, which provides, in terms, that eighty-five
per cent of the work estimated by the architect should
be paid as the work progressed, whilst in the case cited
no payment was to be made until the work was com-
pleted, and as it was not completed the mechanic could
not recover for the work he had done." It is true that
there are distinguishing features between that case and
this, prominent among which is the fact that there the
defendant had positively refused to pay the architect's
estimate of the work done before the destruction of the
building, and afterwards refused to pay the same, insist-
ing that to entitle him to pay therefor he was bound to

replace the work destroyed without any compensation, and the plaintiff's right to abandon the work was placed partly upon the refusal to pay and the unjust demand, as well as the destruction of the building. But the case does hold that where, by the terms of a contract of this character, payment is to be made as the work progresses, the doctrine announced in *Appleby* v. *Meyers* has no application.

We think the Appellate Court properly ruled that plaintiff was entitled to recover under the first count of the declaration, but we are unable to find authority or satisfactory reason upon which to sustain the second. The language, "payment to be made as the work progresses," cannot, we think, be considered to mean more than that the $1250 should be paid as stated,—that is, it cannot be construed to mean that payments after the engine was on the foundation should be made as the work progressed, it being expressly stated, "final payment to be due and payable when the elevator is put up in good running order,"—that is, when the work was complete. Therefore, on a proper construction of the contract the second proposition should have been refused. There was, however, no error in the judgment of the trial court, because under the first proposition, which, as we have seen, was properly held, the plaintiff was entitled to recover the $1250, with five per cent interest thereon from August 1, 1891, to the date of the judgment, July 5, 1895, which amounted to considerably more than the $1390 recovered.

The judgment below will be affirmed.

*Judgment affirmed.*

PHILLIPS and CARTWRIGHT, JJ., dissenting.