NATIONAL CABLE & MANUFACTURING COMPANY, Respondent, v. FILBERT, Appellant.

(140 N. W. 741.)

1.   **Sale—Contract—Dependent Condition — Construction — Directing Verdict.**

Where a hardware dealer contracted for lightning rod materials, the contract giving him an exclusive agency to sell the rodding, the vendor agreeing to furnish a salesman to assist in starting the business, and who should have as compensation half of the profits, the vendee not to attempt to put up any rods until vendor's agent was present, and it clearly appearing that the condition as to salesman was inserted because of a necessity arising out of vendee's inexperience both in selling and putting up rods and for mutual benefit and protection of both parties, it not clearly appearing in the contract whether it was the intent of the parties that the provision for payment for the rods was conditioned upon vendor's furnishing a salesman, **Held,** that the effect of such provision is to be determined by a

consideration of the entire contract and the intention of the parties as ascertained from their language and conduct and surrounding circumstances; therefore, the trial court erred in refusing to submit the case to the jury on the evidence, and in directing a verdict for plaintiff.

Smith and Gates, J. J., dissenting.

**2.  Condition Precedent—Rescission of Contract.**

Where vendor fails to perform a condition precedent to his right to the purchase price, vendee need not rescind by returning the goods in order to avoid liability.

**3.  Trial—Directed Verdict—Inferences on Evidence.**

Where trial court directed verdict for plaintiff, all of defendant's evidence must be taken as true, and he is given benefit of all legitimate inferences therefrom.

(Opinion filed March 31, 1913.)

Appeal from Circuit Court, Grant County.    Hon. FRANK McNULTY, Judge.

Action by the National Cable & Manufacturing Company, a corporation, against W. F. Filbert, for recovery of purchase price of lightning rod materials sold.    From a judgment for plaintiff upon a directed verdict, defendant appeals.    Reversed, and new trial ordered.

*Thos. L. Bouck,* for Appellant.

In the consideration of this case this court will accept as true all of the evidence of the defendant, and the defendant should be accorded all reasonable inferences arising from the evidence, and the same should be construed most favorably in his behalf.    Bohl v. City of Dell Rapids, 15 S. D., 619, 91 N. W. 315; Marshall v. Harney Peak Tin Mining, Milling & Mfg. Co., 1 S. D. 350, 47 N. W. 290; Ernester v. Christianson, (S. D.) 123 N. W. 711; Wolklin v. Horswill, (S. D.) 123 N. W. 668.

In construing the contract between these parties, all the facts and circumstances above mentioned should be considered, and the provision requiring plaintiff "to furnish a salesman to assist in starting the business" should be construed by this court the same as it was construed and acted upon by the parties.    It is evident that the parties regarded it as a condition precedent, and as a dependent undertaking on the part of the plaintiff when such assistance was properly requested by the defendant.    For the purposes of this action, the same construction should be placed upon this condition

of the contract by this court. 9 Cyc. 588; 35 Cyc. 98; Kennedy v. Lee, 147 Cal. 596, 82 Pac. 257.

When mutual covenants go to the whole consideration on both sides, they are mutual conditions, with one precedent to the other. Lobaer v. Bangs, 69 U. S. 729, 17 L. Ed. 768.

Whether covenants in a contract are dependent or independent, is to be determined according to the intention of the parties as appears from the instrument, and in the cases of doubt, will be construed as dependent. Ink et al. v. Rohrig, 23 S. D. 548.

The failure on the part of the plaintiff to perform its part of the contract could under the law be interposed by the defendant as a defense in an action for the price of the goods. Davis v. Jeffris, 5 S. D 352.

If a contract is broken by one party, he has no right, while refusing or unable to perform its terms, to complain of the rescission of the contract by the other. McColl v. Frith, 101 N. Y. 677.

This was a virtual admission on the part of the plaintiff of failure on its part to perform its contract, and an excuse for defendant's failure to return the goods sooner, and an agreement which gave him an option to rescind the contract and return the goods the next year if the plaintiff failed to furnish assistance. This evidence was disputed to a certain extent by the plaintiff, and it was a question for the jury to determine whether or not any such agreement was made. Dignan v. Spurr, 3 Wash. 309, 28 Pac. 529; Stott v. Chamberlain, 21 S. D. 520; H. Hirschberg Optical Co. v. Michaelson, (Neb.) 95 N. W. 461.

*Thad. L. Fuller, and Burns & Hillman,* for Respondent.

Did the plaintiff furnish a salesman to assist the defendant in starting the business?

The evidence set out in appellant's brief, as well as the evidence considered by the respondent in this brief shows that such a salesman was furnished.

The respondent maintains that under the terms of the contract involved in this controversy (Appellant's brief Fol. 21; Tran. p. 22), as to whether or not the men furnished by the plaintiff did satisfactory work for the defendant; whether or not such salesman consummated any sales for defendant; whether or not the defendant and such salesman were able to divide one-half of the

profits arising from the sale of said goods during said canvass, relate entirely to immaterial issues.

The plaintiff did furnish the salesman at the request of Filbert, and thereby fully complied with the terms of its contract. Plaintiff did not agree that such salesman would make sales of the merchandise which it had sold to defendant.

As to what construction should be placed upon the written contract by the plaintiff or by the defendant, is a question of law and not one of fact; and, under any circumstances, in view of the evidence referred to, was for the court.  The intention of the parties is very apparent from the fact that the plaintiff felt that it had complied with its contract when it sent salesmen to the defendant. On the other hand, the defendant has made the claim that such salesmen were unable to accomplish anything for him in the way of transacting the business contemplated by the contract; and that he had the right to rescind the contract and return the goods. The defendant has said that he was authorized and directed by the plaintiff to rescind the contract, but we firmly believe that it would be impossible for the court to place any such construction upon any statements made by plaintiff.

There is nothing contained in that agreement that the plaintiff should undertake the erection of a system of rods for the protection of buildings from lightning because the plaintiff in this action simply sold the merchandise and the defendant, at the time he made the contract, agreed to purchase the merchandise, knowing that he would not be able to sell the same unless he employed an expert to assist him in the canvass for purchasers.

Direct oral statements of intention in respect to the subject of a written contract are admissible only when the language used is equivocal.  Grout Bros. v. Moulton, 79 Vt. 122.

It is elementary that stipulations in a contract are not construed as conditions precedent unless the construction is made necessary by the terms of the contract.  Walker v. Stimmel, (N. D.) 107 N. W. 1081; Deacon v. Blodget, 11 Cal. 416, 44 Pac. 159. The true doctrine, as we understand the authorities, is enunciated in the case of Leonard v. Dyer, 26 Conn. 172, 68 Am. Dec. 382, as follows:  "Whether stipulations in a contract are conditions precedent to a right to enforce performance is to be determined by the intention of the parties, derived from the contract itself, by applica-

tion of common sense to each particular case, rather than by technical rules of construction." Note to Benjamin on Sales, p. 595; Wiley v. Inhabitants of Athol, 150 Mass. 426, 23 N. E. 311, 6 L. R. A. 342; Tipton v. Feitner, 20 N. Y. 423.

"The language of a contract is to govern its interpretation if the language is clear and explicit, and does not involve an absurdity." Civil Code, Sec. 1247.

POLLEY, J.  This action grew out of a contract entered into between the plaintiff, a corporation doing business at Niles, Mich., and the defendant, a hardware and implement dealer at Twin Brooks, S. D.  The contract was entered into on the 18th day of December, 1907, and provided for the sale, by the plaintiff to the defendant, of a quantity of copper cable and other material and fixtures that enter into the construction and equipment of lightning rods.  The contract provided for the delivery, by the plaintiff, of the goods at the railway station at Niles, Mich.  The contract gave the defendant the exclusive right to sell the merchandise described in the contract, and other merchandise of a similar character to be purchased from the plaintiff, but restricted the territory within which he might sell to Twin Brooks, Milbank, Corona, and Marvin and limited the time within which he might sell to the period between the acceptance of the contract by the plaintiff and the 1st day of December, 1908.  The defendant was also bound by the contract, during the above period, not to purchase any similar goods from any other manufacturer..  It contained a covenant fixing the minimum price for which he should sell said copper cable, and also contained the following covenant, to-wit:  "That said first party [plaintiff] agrees to furnish a salesman to assist in starting the business as soon as possible after requested by said second party, and that said second party, in case a salesman is furnished at his request, agrees that on arrival of the said salesman, he, said second party, will furnish a man and team and at once proceed to canvass jointly with said salesman, exclusively for the sale of lightning rods, and that, as soon as said canvass is terminated, he, said second party, hereby agrees to pay said salesman, as compensation for his services, an amount equal to one-half of the profits arising from the sale of the goods during said canvass."  Plaintiff's agent, also, in addition to the numerous restrictions contained in the written contract, gave defendant positive instructions not to at-

tempt to put up any rods until they (meaning some of plaintiff's agents) were there to show him how to put them up.

In consideration of the many restrictions placed upon the defendant in regard to the price, the use, and the disposition defendant was to make of these goods, he was little more than an agent of the plaintiff for the purpose of selling plaintiff's goods for a limited period of time within restricted territorial limits. Blank spaces in the contract providing the terms of payment were never filled out; but the treasurer and assistant treasurer of the plaintiff corporation both testified that the goods were to be paid for on the 1st of June, 1908. The goods were shipped by the plaintiff and received by defendant at his place of business in Twin Brooks, S. D. No question was ever raised as to the value of the goods, or that they were not shipped according to contract; but defendant claims that the plaintiff never furnished him with a salesman to assist in starting the business, as provided for in said contract, and justifies his refusal to pay the bill solely upon that ground.

The defendant alleged and proved by the evidence that he did not understand or know anything at all about selling lightning rods, or how to put them up, at the time of entering into the contract. That, in order to sell them, it was necessary to go out and put them up for the purchasers on the buildings to be protected thereby, and that it required some expert skill and experience to do this properly. That these facts were well known to the plaintiff, and that it was in contemplation thereof that the agreement to furnish a salesman was inserted in the contract. He also alleged and proved that he made repeated requests upon the plaintiff to furnish such salesman, or expert, as he was termed at the trial, but that plaintiff wholly failed to comply with said request, and thereby rendered the goods wholly valueless to him. He retained the goods until the 10th day of May, 1909, when he attempted to rescind the contract and returned the goods to the plaintiff at Niles, Mich.

The case was tried to a jury. The plaintiff, on the trial, treated the agreement to furnish the expert as one of the "conditions precedent" to be preformed by it, and directed the greater part of its somewhat voluminous testimony to an attempt to prove that it had complied with this requirement of the agreement. At the close of all the testimony, the plaintiff moved the court to

direct a verdict for it "for the reason that the undisputed evidence in this case fails to show that the defendant has established any. facts sufficient to constitute a defense, and for the further reason that the evidence offered and received itself shows that the plaintiff has done all things by it required under the terms of the contract in evidence, and that the undisputed evidence in this case shows that there has not been a failure of consideration, and that the furnishing of a salesman to assist in the starting of the business, by the plaintiff, was not an element of the consideration of the contract, but that it affirmatively appears in the agreement that the defendant therein agreed to pay the salesman, as a compensation for his services, an amount equal to one-half of the profits arising from the sale of said goods during said canvass, and that the evidence offered by the defense relates to a matter which does not constitute a defense, but simply a condition, and that the measure of damages, if at all, should arise under altogether a different remedy from that which appears from the pleadings in this case." This motion was granted, and defendant took exceptions.

The appellant assigns as error: First, the admission of the original contract in evidence; second, the direction of the verdict by the court; and, third, the entry of the judgment upon the directed verdict. The first assignment seems to have been abandoned by appellant in this brief; and, as a disposition of the third depends upon the determination of the second, it will be necessary to consider the second assignment only.

[1] As the case appears on appeal, the question involved depends wholly upon the construction to be put upon the above-quoted clause of the contract. It is strenuously contended by the respondent that this clause in the contract is an independent covenant to be performed by the plaintiff at some subsequent time, and without reference to defendant's liability, and that therefore the court was justified in taking the case from the jury. On the other hand, it is just as strenuously contended by the appellant that this covenant is one of the material elements of the contract, or was a "mutual and dependent condition," to be performed by it to entitle it to the purchase price. If this contention is correct, then the question should have been submitted to the jury.

[2] We may state, at the outset, that the fact that the defendant undertook to rescind by returning the goods to the plaintiff

would ordinarily be wholly immaterial to a determination of the issues in the case. If it were necessary, as contended by defendant, that the plaintiff must comply with the disputed condition in the contract before it became entitled to the purchase price, it was unnecessary for him to rescind in order to avoid liability. He would have a perfect right to wait until the plaintiff had performed all of its obligations before he became liable for the purchase price. On the other hand, if the disputed clause in the contract was an independent covenant or "condition subsequent," then the defendant became fully liable upon plaintiff's delivery of the goods, and his attempted rescission would have been of no avail.

In this case, defendant returned the goods pursuant to directions given by one of plaintiff's agents. This agent was in Twin Brooks, and defendant informed him that plaintiff had not lived up to its agreement in furnishing defendant with the assistance it had promised. The agent admitted "that they had not got round as they ought to," but that they had been terribly rushed, and would try to do better another year, "if you want to keep it" (meaning the merchandise in question). Defendant informed him that he intended to return the goods, whereupon the agent replied: "Well, we will find a place to ship it to, and, if we don't give you shipping directions, you can ship it in." Under these conditions, it became incumbent upon defendant to return the goods.

The contract does not specifically state upon its face that this provision is a condition precedent, and, therefore, whether it is such or not is a matter of construction for the court, and depends upon a consideration of the entire contract and the intent and understanding of the parties themselves, as disclosed by their conduct relative thereto.

[3] The court having directed a verdict for the plaintiff, all the evidence of the defendant must be taken as true, and he must be given the benefit of all legitimate inferences therefrom. Marshall et al. v. Harney Peak Tin M. M. & M. Co., 1 S. D. 350, 47 N. W. 290; Bohl v. City of Dell Rapids, 15 S. D. 619, 91 N. W. 315; Ernster v. Christianson, 24 S. D. 103, 123 N. W. 711; Walklin v. Horswill, 24 S. D. 191, 123 N. W. 668.

Provisions in contracts like the one in dispute in this case have been much litigated in the courts; but, owing to the peculiar nature of the question, each case must be determined in accordance

with the facts involved.   No definite rule, other than to determine the real intent of the parties, where the same is not clearly expressed by the terms of the contract, can be laid down; and it is rarely that the conclusions reached in one case can be decisive of another.   As was said by Foot, J., in Grant v. Johnson, 5 N. Y. 255: "So many decisions have been made on the vexed question of what are, and what are not, dependent covenants, and so many of them are irreconcilable that they rather perplex than aid the judgment in determining a given case.   One rule is universal, and that is that the intent of the parties is to control."   While this is true, the principles and reasoning that have been applied in the adjudicated cases are helpful in determining this vexed question, and the following cases are instructive:   Wood v. Code, 13 Pick. (Mass.) 279; Coos Bay Wagon Co. v. Crocker (C. C.) 4 Fed. 577; Williams v. Healey, 3 Denio (N. Y.) 369; Lester v. Jewett, 11 N. Y. 453; Clark v. Weis, 87 Ill. 438, 29 Am. Rep. 60; Dunham & Dimon v. Pettee & Mann, 8 N. Y. 508.

In the case of Oliver v. Oregon Sugar Co., 42 Or. 276, 70 Pac. 902, the court, in considering the severability of contract, say: "Whether a contract is entire or severable is a question of construction, depending upon the intention of the parties, to be ascertained and determined from the language employed, the subject-matter, and the surrounding circumstances. 'If the part to be performed by one party," says Mr. Justice Prim, 'consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable.   And the same rule holds where the price to be paid is clearly and distinctly apportioned to different parts of what is to be performed.' "   The suit was one brought for the recovery of the purchase price of several car loads of sugar beets, which defendant had purchased from plaintiff at a stipulated price per ton. The weight of some of the cars had not been determined at the time of the suit, and the defendant defended on the ground that the contract was an entirety, and recovery could not be had for any of the beets until the weight of the whole was known.  The court held, and rightly, that, inasmuch as the price of the beets was fixed at so much per ton, the contract was severable, and that the plaintiff was entitled to recover for the quantity of which the

weight was known.   There was no express agreement that none of the beets should be paid for until the weight of the whole had been determined.

In Ink et al. v. Rohrig, 23 S. D. 548, 122 N. W. 594, this court announced the rule as follows: "The universal rule laid down under the authorities concerning the construction of covenants in contracts, as to whether they are dependent or independent, is that the relation of covenants is to be determined according to the intention and meaning of the parties as the same appears in the 'instrument, and by the application of common sense to each particular case, to which intention, when once discovered, all technical forms of expression must give away.   It is further held under the authorities that, in case of doubt, the courts will construe such covenants as dependent, rather than independent." And, quoting from Bank v. Hagner, 1 Pet. 464, 7 L. Ed. 219, the court said: "In contracts of this description, the undertakings of the respective parties are always considered dependent, unless a contrary intention clearly appears.   A different construction would, in many cases, lead to the greatest injustice, and a purchaser might have payment of the consideration money forced upon him, yet be disabled from procuring the property for which he paid it. Although many nice distinctions are to be found in the books upon the question as to whether the covenants are promises of the respective parties to the contract or to be considered independent or dependent, yet it is evident the inclination of the courts strongly favored the latter construction as being obviously the most just.   The seller ought not to be compelled to part with his property without receiving an equivalent in return."

In the case of Davis et al. v. Jeffris, 5 S. D. 352, 58 N. W. 815, this court used the following language: "Whether or not a covenant is dependent or independent must be ascertained from the contract and attending circumstances; the rule being that such covenants will be construed as dependent, unless a contrary intention appears from the terms of the contract."   This was an action to recover on a contract for the construction of a creamery and cold storage plant, according to plans and specifications contained in the contract.   The contract provided that the cold storage department should be constructed under the McCray Cold Storage and Refrigerator patents, and contained the following

covenant: "We agree to furnish with said contract a patent deed from the McCray Refrigerator Company, conveying all the rights under said patents." The provisions of the contract, so far as the erection and equipment of the plant is concerned, were carried out by the plaintiff, but the patent deed for the McCray Cold Storage and Refrigerator patents was not furnished; plaintiff contending that the stipulation to furnish the said patent deed was an independent stipulation or covenant, and that the plaintiffs were not required to prove that they had furnished or tendered such deed to entitle them to recover on the contract. The contract provided that the defendants should pay for the creamery and cold storage when "completed." The court held that the completion of the plant without the patent deed was not a "completion of the contract" and that proof that the patent deed had been furnished was essential to plaintiff's right of recovery, holding that, although the contract, so far as the completion of the plant is concerned, had been fully complied with by the plaintiff, still it would be of no value, and could be made of no use to the defendants, unless the patent deed conferring upon defendants the right to use the McCray Cold Storage and Refrigerator process was furnished; that they contracted for something that they knew would be valueless to them when they got it, or else the covenant to furnish the patent deed was one of the essential elements of the contract. This case is directly in point with the case at bar. When all the surrounding and attending circumstances are taken into consideration, it cannot but appear that, when the defendant entered into the contract sued upon, the furnishing of a salesman to help defendant dispose of the goods contracted for was as important an element in the transaction as the goods themselves. The goods sued for were not staple goods; they could not be placed upon the shelves in defendant's store and sold in the ordinary course of business. In order to dispose of them, it was necessary to canvass the territory over which they were to be sold, and to attach them to the buildings of purchasers as they went along.

Again, the goods did not become the property of defendant, in the full sense of the word. While, technically, the title passed with the delivery to him, still he could not exercise that unrestricted dominion over them that a person may exercise over that which belongs to him. The plaintiff, despite the fact that they had been

delivered to the defendant in another state, still retained almost complete control over them.  It fixed the price under which they could not be sold: it limited the time beyond which defendant could not sell them; and it limited the territory within which they might be sold.  It was known to both parties that the defendant had had no experience in handling this class of goods; that he did not know how to attach lightning rods to buildings that were to be protected thereby, which was necessary to do in order to dispose of them.  It was fully understood and contemplated by both parties, at the time of the making of the contract, that it was necessary that some person, who had had the requisite skill and experience, assist defendant in starting the business; and defendant was given positive instructions not to attempt to put up any rods until they (meaning plaintiff's agents) were there to show him how to do it.  The goods were contracted for in December, delivered during the following March, but were not to be paid for until the first of the following month of June, thus affording the plaintiff ample time and opportunity to send its salesman and furnish the defendant the requisite information.

Again, a careful examination of the disputed clause in this contract, in view of the attending circumstances, will be instructive.  It will show that the covenant contained in this provision was as much in contemplation of the parties thereto, at the time of entering into the contract, as the shipment of the merchandise itself.  It was the inducement that led defendant to enter into the transaction; it was not an afterthought nor a mere gratuitous act on the part of plaintiff, to be performed only at the option of defendant.  Plaintiff agrees absolutely to do it.  True, it is to be done so soon as possible after requested, but it is to be done whether requested or not; and the only option the defendant had in the matter was by making the request to fix the time, or rather to hasten the time, of his coming.  Neither is the condition requiring the defendant to furnish a man and team to assist such agent and to pay his compensation out of the profits from sales they jointly made an absolute condition to be performed at all events.  He is to do this only in case he has made the request to have the agent sent.  If plaintiff sent him in compliance with the terms of his agreement, it would be without cost to the defendant.

It was to the pecuniary interest of the plaintiff to have the

goods shipped to defendant disposed of at as early a date as possible; and it was also to its pecuniary interest to have the lightning rods, when sold, properly attached to the buildings for the purchasers, in order that a market for other similar goods might be created as contemplated by the terms of the agreement. It was for this reason that plaintiff, through its agents, instructed the defendant not to try to put up any lightning rods until they were there to show him how to do it, and for this reason defendant could not dispose of the goods nor derive any benefit whatever from the purchase until this assistance was furnished. Thus, it will appear that the furnishing of the assistance provided for in the disputed clause of this contract is one of the most important and essential elements of the entire agreement. And this is the view taken by both plaintiff and defendant. Ample time for its performance was allowed between the sale of the goods and the time the purchase price was to become due. During this time, one or two of plaintiff's agents visited the defendant, and plaintiff claimed they had complied with the agreement. Defendant claimed they did not, and refused payment on that account. Later on plaintiff sent other of its agents to defendant, who they claimed rendered defendant the assistance provided for in the contract, but this was disputed by defendant; and whether they did or not was the principal and practically the only issue raised at the trial. That plaintiff so regarded this condition is apparent from the fact that it assumed the burden on its main case of showing that this clause in the contract had been fully complied with.

If the intent of the parties, when entering into the contract, is to be gathered from their understanding of and conduct relative thereto, then certainly the agreement to furnish the defendant this assistance in starting the business was one of the essential elements of the contract; and the question whether it had been complied with or not should have been submitted to the jury.

The judgment and order appealed from should be reversed, and a new trial awarded.

SMITH, J. (dissenting). I cannot concur in the conclusion announced by the majority opinion in this case. It seems to me that both the reasoning and the conclusion must be based upon the theory that some ambiguity exists in the written contract, which calls for extrinsic evidence to enable the court to interpret it.

Where the contract is clear and unambiguous in its terms, the rule has been settled since the early days of the common law that evidence to show the understanding of the parties, as disclosed by their conduct relative thereto, is incompetent. The majority opinion not only ignores this long-settled rule, but undertakes, in effect, to add to the terms of the written contract, by oral evidence, a condition that plaintiff's agent "gave defendant positive instructions not to attempt to put up any rods until they (plaintiff's agents) were there to show him how to put them up." The opinion also makes the remarkable addition to the contract that "it was fully understood and contemplated by both parties, at the time of the making of the contract, that it was necessary that some person, who had requisite skill and experience, should assist defendant in starting the business, and that defendant was not to put up any rods until plaintiff's agents were there to show him how to do it." This statement includes the assumption that the persons or agents who were to show defendant "how to put up the rods" are the "salesmen" mentioned in the contract. Not a syllable in the contract warrants the conclusion. It amounts to reading into the contract a stipulation that the "salesman" to be furnished shall also be an expert possessing mechanical knowledge and skill necessary in the erection of lightning rods. Also the further somewhat remarkable statement is made that the salesman must be furnished whether requested or not, followed by another remarkable statement that defendant is bound to pay the salesman "only in case he had made the request to have the salesman sent." I frankly admit a want of mental agility sufficient to enable me to reach such conclusions from any language used in the contract.

In connection with these statements, the exact language of the contract is suggestive; "In case a salesman is furnished at his request * * * he will proceed to canvass jointly with said salesman, exclusively, for the sale of lightning rods. * * * " To this language the majority opinion subjoins a material statement not found in the contract—i. e., that defendant did not understand putting up lightning rods, and that, in order to sell them, it was necessary to have an expert to put them up—and then the argument proceeds on the theory that plaintiff's agreement was not only to furnish a salesman, but one who was an expert in putting up

17—Vol. 31, S. D.

lightning rods. The entire reasoning which follows is founded on this expert element, and finds its culmination in the assertion that plaintiff's agents gave defendant "positive instructions" not to attempt to put up any rods until an expert was there "to show, him how to do it." It would require a very robust contract, indeed, to stand up under such methods of interpretation. It seems to me that, by means of such assumptions, any written contract, no matter how clear and unequivocal the language used, might be made to assume Protean phases to suit any contention of parties. It is conceded that the construction of this particular clause of the contract is the vital question on this appeal. On its solution depends the question whether the contract is entire or severable. Eliminating the assumption that the contract requires plaintiff to furnish an expert in putting up rods, as well as a salesman, the case, I think, presents but little difficulty.

If the contract is divisible, no right of rescission existed, even if plaintiff wholly failed to furnish a salesman upon demand, as alleged by defendant. If defendant suffered damage from any neglect to furnish salesman, he had a remedy either by way of counterclaim in this action or by an independent action. Enough has been said, I think, to show that payment for merchandise delivered is entirely independent of the provision regarding salesmen; but it may also be noted that, under the terms of the contract, payment became due within 60 days at the farthest. Plaintiff also leased and furnished defendant a static electric machine, to be retained by him until December 1st, presumably for his own personal use in the business, which was done. All of which shows that defendant had the right to do business independently of the aid of any salesman who might be furnished by plaintiff. It is quite clear to my mind that the provision relating to salesmen was entirely independent of payment for goods furnished.

The divisibility of the consideration is perhaps the most vital factor in determining whether a contract is entire or severable. It will be observed that, under the provisions of this contract, the price to be paid for merchandise, and the compensation to be paid assistant salesmen by division of commissions, constitute entirely separate and distinct matters appearing on the face of the contract, and neither is made dependent, by the terms of the contract, upon the other. The question whether provisions of a contract are in-

tended by the parties to be dependent or independent is to be determined from the language used in the contract, if possible.

In Oliver v. Oregon Sugar Co., 42 Or. 276, 70 Pac. 902, the court says: "Whether a contract is entire or severable is a question of construction, depending upon the intention of the parties, to be ascertained and determined from the language employed, the subject-matter, and the surrounding circumstances. 'If the part to be performed by one party,' says Mr. Justice Prim, 'consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable, and the same rule holds where the price to be paid is clearly and distinctly apportioned to different parts of what is to be performed.' Tenny v. Mulvaney, 8 Or. 129."

In Parsons on Contracts, vol. 2 (8th Ed.) p. 517, the author says: "If the part to be performed by one party consists of several separate and distinct items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable; and, if the consideration to be paid is single and entire the contract must be held to be entire, although the subject of the contract may consist of several distinct and wholly independent items."

An order for different articles, if the quantity, description, and price of each is separately specified, is severable, so that the purchaser, upon receipt of the goods, may retain those which comply with the contract, and reject those which do not. Potsdamer v. Kruse, 57 Minn. 193, 58 N. W. 983; Pierson v. Crooks, 115 N. Y. 539, 22 N. E. 349, 12 Am. St. Rep. 831.

A contract to do several things at different times is divisible in its nature, and a recovery may be had for every default. Badger v. Titcomb, 15 Pick. (Mass.) 409, 26 Am. Dec. 611. If one buys mining property of another, agreeing to pay therefor a certain proportion of the net proceeds of the mines, and to employ the vendor as superintendent, the contracts are severable, and the vendor's discharge, though wrongful, is no breach of the contract concerning the net proceeds. Hutchens v. Sutherland, 22 Nev. 363, 40 Pac. 409.

A contract is generally severable which clearly apportions the

payment of different parts of the work, although the work may be in its nature single and entire.   Siegel, etc., Co. v. Eaton, etc., Co.., 165 Ill. 550, 46 N. E. 449.

The rule that a party who has failed to fully perform his contract cannot recover for part performance applies only to entire, and not to severable, contracts, which are, in legal effect, independent agreements about different subjects, although made at the same time.   McGrath v. Cannon, 55 Minn. 457, 57 N. W. 150.

In First National Bank v. Spear, 12 S. D. 114, 80 N. W. 168, this court said: "This court held in Davis v. Jeffris, 5 S. D. 352, 58 N. W. 815, that in a mutual contract the undertakings of the respective parties are considered dependent unless a contrary intention clearly appears.   This is undoubtedly the correct rule, where it does not affirmatively appear from the contract itself that the parties intended that the stipulations should be independent."

It will be observed that the clause in the contract under consideration left it optional with the defendant whether he would require plaintiff to furnish salesmen to assist in the canvass for sales of merchandise.   The defendant, by the terms of the contract was not required to accept the assistance of salesmen or to pay them commissions on sales.   It was optional with him to proceed without the assistance of salesmen.   The contract requires that the defendant shall pay the plaintiff for the merchandise purchased, at prices stipulated in the contract, but provides that the pay of the salesmen, if any are employed, shall be made to the salesmen, and the plaintiff has absolutely no interest whatever in the compensation to be paid salesmen furnished by it.   It is very clear that the plaintiff, under this contract, is given no right which would enable it to sue for or recover the compensation earned by salesmen. The right to the commissions could only be enforced by the salesman himself, who had earned them.   It therefore seems clear to my mind that these provisions of the contract are distinct and severable; and even if it be conceded that plaintiff failed to furnish salesmen, as alleged by defendant, such failure would constitute no ground for a rescission of the contract, which is the defense alleged in the answer.   McGrath v. Cannon, supra.

The case of Davis v. Jeffris presents an entirely different contract.   The contract in that case was to erect a refrigerator plant to be constructed according to certain patents, and to furnish a

patent deed from the patentee, the McCray Refrigerator Company, without which the refrigerator plant could not be operated without infringement of the patent. It is apparent that, on the face of the contract, is was an entirety, and that the deed for the patent under which the refrigerator could be operated was an essential and indivisible part of the contract.

The evidence in the case at bar was incompetent and cannot throw any light whatever on the proper interpretation of the contract. This court, I think, laid down the correct rule for interpretation of contracts, with reference to dependent provisions, in Ink v. Rohrig, supra, when it said: "The relation of covenants is to be determined according to the intention and meaning of the parties as the same appears in the instrument and by the application of common sense in each particular case." In Davis v. Jeffris, supra, this court did not resort to extrinsic evidence to evolve a theory as to the intention of the parties, but placed the decision squarely upon the language of the contract itself, which was clear and unequivocal. There is nothing in the contract in this case to warrant a departure from this well-settled rule applicable to all contracts, when it is sought to ascertain the true intent of the parties. It is the rule laid down in the Civil Code: "Sec. 1247. The language of a contract is to govern its interpretation, if the language is clear and explicit and does not involve an absurdity." In Strunk v. Smith, 8 S. D. 412, 66 N. W. 928, this court said: "This section of the Code does not 'permit an oral extrinsic showing that such was the intention of the parties to a written contract, the terms of which are expressed in clear and explicit language.'"

I am inclined to the view that the trial court was right in its interpretation of the contract, and that the order and judgment of the trial court should be affirmed.

GATES, J., Concurring.