## SIMPSON v. CRANE.[1]

**1. CONTRACTS—MISREPRESENTATIONS— EVIDENCE — ADMISSIBILITY.**
Where plaintiffs declined to accept an agreement drawn on the basis of certain alleged misrepresentations of their agent to defendants, and proposed a new one which defendants accepted, and which not only was not based upon or obtained by reason of the fraudulent representations, but was independent of, and in effect repudiated them, such new agreement became the entire agreement between the parties, and testimony as to the alleged fraudulent representations was inadmissible to avoid it.

**2. SALES—CONTRACTS—GOODS FOR RESALE — BREACH BY SELLER.**
Where a seller of goods for resale fails to perform his contract as to furnishing advertising matter and other aid to making sales, and such failure to perform is not waived, the measure of his damages in an action for the price is the contract price, less such amount of damages as the buyer can show he has suffered by reason of the seller's default.

**3. SAME—INFERIOR QUALITY OF GOODS — RECOUPMENT OF DAMAGES.**
Where a buyer of goods receives precisely what he ordered he cannot recoup any damages on account of the inferior quality or efficacy of the goods.

Error to Eaton; Smith, J. Submitted January 9, 1907. (Docket No. 8.) Decided March 5, 1907. Rehearing denied July 15, 1907.

Assumpsit by Henson S. Simpson, George H. Simpson, and T. Scott Simpson, copartners as the Acme Food Company, against William H. Crane and Elmer McGee, copartners as Crane & McGee, on certain promissory notes. There was judgment for defendants, and plaintiffs bring error. Reversed.

*Frank A. Dean*, for appellants.

*Black & Reasoner* and *S. B. Roe*, for appellees.

[1] The opinion filed on the original hearing in this case was withheld from publication pending the rehearing.

BLAIR, J.   Plaintiffs instituted suit against defendants by filing a declaration on the common counts in assumpsit with notice that on the trial they would give in evidence three promissory notes, dated November 19, 1903, for $300 each, and payable in four, seven, and ten months, respectively.   Attached to each note, the following appeared in print, except the signature:

"We, the undersigned, agree with Crane and McGee, of Millett, State of Michigan, executing above orders as follows: You are expected and instructed to sell said Acme Food strictly on its merits as the guaranty provides, and to warrant and guarantee the said food to each customer if therein fed according to printed directions.   And we agree in all cases where your customers have fed the food as aforesaid, and furnish us with their affidavit on printed form furnished by us, to ship to you, free of charge, F. O. B. on cars at your station, as many pounds not exceeding five hundred pounds to a single customer as shall appear by such affidavits to have been used by such customer.   It is understood that this warranty shall cover in each case only the first sale made to each individual customer.   All blank spaces and such affidavit must be filled in ink before same are executed; and the party executing same must clearly and explicitly state that he has fed said food in accordance with instructions, detail the manner of feeding same, and that his stock has derived no benefit therefrom, otherwise this warranty is of no force or effect.   No agreement recognized unless in writing on this sheet.

                    "ACME FOOD COMPANY,
                      "188 East Madison Street,
                        "Chicago, Illinois.
                      "C. A. HAMMOND, Salesman.

"Form A."

The guaranty referred to was in print, and pasted on the receptacles containing the food.   Defendants had purchased food of plaintiffs prior to giving the notes in question, and had been negotiating with them through their agent, Hammond, for larger quantities and more extensive territory.   November 18, 1903, plaintiffs wrote to defendants a letter containing the following:

"We would be pleased to turn to you such dealers as may be possible in the way of assisting you in securing further subagents in the territory unoccupied, and would also guarantee to send you our salesman to work two or three days with such subagents as are established, as well as to give the same amount of assistance to each dealer that you establish, and thereafter to call upon you every thirty to forty-five days as nearly as is possible for the purpose of loaning you such assistance, and after your subagents have been assisted, you would thereafter drive with them from time to time and pull every and all strings possible to bring about the best possible results. By handling the Acme Food business on this basis, you would be able to handle several carloads a year. We have instructed Mr. Hammond to offer you the eastern half of Eaton county, less the territory tributary to Eaton Rapids, and also the western half of Ingham county, providing you favor us with an order for a carload lot and are also in a position to favor us with sufficient information or security, so that we will be able to grant to you the credit favors which you may desire.

"Should you desire to favor us with an order of that character, possibly it would be well for you to also favor us with a property statement on blank inclosed."

On November 19th, defendants executed a written contract with the agent Hammond and forwarded it to the plaintiffs, along with the notes executed at the same time. Hammond had made various material representations to defendants as to the quantity of food in the proposed territory, the ingredients of the food, its efficacy, the number of subagents, and what the plaintiffs would do to help make sales, etc. This contract was drawn in accordance with the terms "as he and I talked." November 21, 1903, plaintiffs wrote defendants as follows:

"Nov. 21, 1903.

"CRANE & McGEE, Millett, Mich.

"*Gentlemen:* We are today in receipt of your order for a carload of Acme Food, as well as property statements and notes in settlement of the same, and wish to advise that the terms specified in the order are much longer time than we as yet have ever granted, and we feel that in justice to ourselves, with the notes drawn for longer

time than a period of six months, that they should bear interest at the rate of at least 6 per cent.

"In regard to the contract which you enclosed will say, that as yet we have never given any contract, and do not believe that the same should be necessary, and the only thing necessary is to have a thorough understanding, and will state that we are willing to give you the north half of Eaton county, Michigan, including the city of Charlotte, also all of Ingham county, Michigan, as well as the town of Shaftsburg in Shiawassee county, Fowlersville in Livingston county, and Rives Jct., in Jackson county, Michigan, and to turn to you any and all dealers now established in that territory, for such time as at least one of your firm devote their entire time to the business, or have a salesman to do so, and we will also give you the assistance as provided in our letter of Nov. 18th, 1903. Therefore if this will be acceptable to you, we then will make shipment of the goods and grant you the time which has been requested.

"We notice that you did not order any Acme Poultry Food, and believe it would also be to your interest to also favor us with at least ten cases of the 28 oz. and 5 lb. packages, as well as about 1,000 lbs. in 10 lb. pails. The list price on the 28 oz. packages is $5.50 per case, and the 5 lb. packages, $12 per case, and the 10 lb. pails, $7 per cwt. On the quantities offered in our letter of the 18th you will notice that a 10 per cent. discount is offered you, and on this Poultry Food we would be willing to grant you 120 days time.

"Car will be loaded next Tuesday, and unless we hear from you to the contrary the same will go forward according to the conditions herein named.

"Yours respectfully,

"ACME FOOD CO.

"Dict. G. H. S."

November 23, 1903, defendants replied as follows:

"CRANE & McGEE,
"Millett, Mich.

"ACME FOOD CO.,
"Chicago, Ill.

"*Gentlemen :* We are in receipt of your favor of 11–21, regarding the order for a carload of food and notes in settlement for same. We insisted that Mr. Hammond make payments according to notes sent you. Our reason for

doing so was to protect ourselves. However, we can assure you that if we can dispose of the car this winter, all notes will be paid within six months; or we are willing to send you all bills for collection as fast as we ship the food out, but do not feel as though we ought to pay five per cent. on notes.

"In regard to the contract, we do not care very much about it; all we ask is that you do all you can for us to get us started; we have a large territory and it's getting late in the season.

"We wrote you Saturday in regard to the Poultry Food. We will try and get all of our agents to handle it, but do not want to order it now in 10 case lots. Will order later on if we can dispose of it.

"Very truly yours,
"CRANE & McGEE."

The car of food was shipped by plaintiffs and received and accepted by defendants.

Defendants gave notice of special defenses under the general issue as follows:

1. That plaintiffs had compromised and canceled their claim.
2. That the notes were obtained by fraud.
3. Failure of consideration and breach of contract.

At the close of the testimony, plaintiffs' counsel, among other requests, requested the court to direct a verdict in their favor for the amount of the notes with interest. The court submitted the case to the jury, who returned a verdict for defendants, and plaintiffs have removed the record to this court for review upon numerous assignments of error. Counsel for defendants allege in their brief that:

"The question of compromise was not submitted to the jury except in accordance with the requests of the plaintiffs. See plaintiffs' requests Nos. 31, 32, 33.   *   *   *

"It was further charged in the special notice as a defense, that the notes in question were void for fraud; that the plaintiffs falsely represented that the animal food which was sold to the defendants, and for which the notes were given, was a useful and valuable food and medicine, containing ground flax seed, herbs, and medicinal mate-

rials. The plaintiffs also falsely represented that there were less than 6,000 lbs. of food in the territory which they were to allot to the defendants, in the hands of the agents or dealers appointed by the plaintiffs to dispose of the food, and the defendants were misled, and bought the stock food in reliance on such representations. The other allegations of fraud contained in the notice were not insisted on at the trial. * * *

"Defendants' contention concerning the fraud in the quality and nature of the food was not submitted to the jury by the court; but only the question whether or not Hammond had falsely represented that there were only 6,000 lbs. in the territory. * * *

"The third division of the defendants' special notice alleged that the defendants were discharged from their obligations under the notes and contract by a material breach of the contract; that the plaintiffs agreed to furnish sufficient advertising matter; to send a salesman to aid for two or three days every 30 or 45 days in the sale of the food; to send a salesman to work for that time with all agents established by defendants, and to sell and dispose of all goods then in the defendants' territory.

"The defendants allege that the plaintiffs failed to send advertising matter in sufficient quantities, and failed to send the salesman to work as stipulated, and neglected to dispose of the goods already in the territory.

"As appears in our statement, the main issues upon which the case was submitted to the jury were but two, viz.:

"*First.* Did the plaintiffs' agent, Hammond, in securing the order of the car load of animal food practice deceit upon the defendants as to the amount of such food then in the territory assigned them?

"*Second.* Did the plaintiffs perform their agreement in furnishing advertising matter and a salesman to aid as promised in the sale of the car load of food in question?"

We think the circuit judge erred in admitting testimony of the representations of the agent, Hammond, to induce the giving of the notes and in submitting the question of fraudulent representations to the jury. The alleged fraudulent representations were made the basis of the agreement between the defendants and said agent. Defendant Crane testified:

"*Q.* Now, witness, at that time you claim he agreed that what goods were in that territory should be taken up by the Acme Company?

"*A.* I testified they would unload them, that they would dispose of them themselves; Mr. Hammond agreed to that.

"*Q.* He said it didn't make any difference how much there was there, they would sell them out before you begun?

"*A.* Yes, sir, he said they would unload them. I think that was included in the contract. * * *

"*Q.* Whatever you agreed to between themselves, you undertook to place in the original contract sent you to sign?

"*A.* Yes, sir: Mr. Hammond dictated most of the contract and I wrote it."

Plaintiffs declined to accept the agreement made as the agent and defendants had talked, but proposed a new agreement, which defendants accepted and which, thereupon, became the only agreement and the entire agreement between the parties. The last agreement was not only not based upon or obtained by reason of the fraudulent representations, but was independent of them, and, in effect, repudiated them.

Aside from the claim that there was no evidence of plaintiffs' default in that regard, we understand plaintiffs' counsel to concede that the question of plaintiffs' compliance with the agreement to assist defendants by sending their salesman to work with subagents, etc., was properly submitted to the jury. While defendants' letters and conduct indicate very strongly that this part of the agreement was performed to their satisfaction, we cannot say that there was no evidence to the contrary for the consideration of the jury.

Plaintiffs seem to have construed the agreement as requiring them to furnish sufficient advertising matter to aid in making sales of the food, and to have undertaken to do so. Whether they carried out this undertaking was a question for the jury.

We do not understand counsel for defendants to con-

tend that there was any competent evidence of a settlement, but that such evidence "was not submitted to the jury as a defense, but only as bearing upon the necessity of tender in case a fraud was found to have been perpetrated by the plaintiffs' agent." As we have held that the evidence of fraudulent representations by the agent was improperly received, there was no basis for this testimony.

In case the jury should find, upon another trial, that plaintiffs had not performed their contract as to furnishing advertising matter and other aid to making sales, and that such assistance had not been waived by defendants, plaintiffs' measure of damages would be the contract price, less such amount of damages as defendants should show they had suffered by reason of such default on the part of plaintiffs. Defendants are not entitled to recoup damages on account of the quality or efficacy of the food, they having received precisely what they ordered.

Judgment reversed, and a new trial ordered.

MCALVAY, C. J., and CARPENTER, GRANT, and MONTGOMERY, JJ., concurred.