## DETROIT VAPOR STOVE CO. v. J. C. WEETER LUMBER CO.

No. 3866.   Decided May 25, 1923.   (215 Pac. 995.)

1. SALES—COMMENDATORY EXPRESSIONS AS TO SALABILITY OF VAPOR STOVES HELD NOT TO CONSTITUTE WARRANTIES. That a seller of certain vapor stoves told one who purchased for resale that the stoves would "sell like hot cakes," and made other commendatory statements, did not constitute a warranty enforceable either as a defense or as an independent cause of action, but was merely dealer's talk.

2. SALES—REMEDY FOR SELLER'S FAILURE TO ASSIST PURCHASER IN MAKING RESALES NOT RESCISSION BUT ACTION FOR DAMAGES. Where defendant purchased from plaintiff certain vapor stoves and heaters for resale, and plaintiff promised to assist defendant in selling the stoves during the season, but failed to do so, defendant's remedy was not rescission, but an action for damages either independently or by way of counterclaim; performance of such promise not being a condition precedent to plaintiff's right to recover the purchase price.

3. PLEADING—REFUSAL TO ALLOW AMENDED COUNTERCLAIM AS STATING NO CAUSE OF ACTION HELD ERROR. In an action by a seller of certain vapor stoves and heaters for the price, a proposed amended counterclaim based on the seller's failure to assist the purchaser in making resale of the stoves, alleging notice to the seller of the breach of his promise as required by Comp. Laws 1917, § 5158, *held* to state a cause of action, and should have been allowed.[1]

Appeal from District Court, Seventh District, Carbon County; *Dilworth Woolley,* Judge.

Action by the Detroit Vapor Stove Company against the J. C. Weeter Lumber Company.   Judgment for plaintiff, and defendant appeals.

---

[1] *Hancock* v. *Luke,* 46 Utah, 26, 148 Pac. 452.

REVERSED, AND REMANDED WITH DIRECTIONS.

*Price & Foutz,* of Price, for appellant.

*O. K. Clay,* of Price, for respondent

THURMAN, J.

In this case judgment was entered for plaintiff on the pleadings. Defendant appeals.

The complaint of plaintiff alleges two causes of action: The first upon a certain trade acceptance, alleged to be for value, executed and delivered by defendant in May, 1920, due and payable in the following August, for the sum of $4,447.85; the second upon an account for goods, wares, and merchandise sold and delivered to defendant between June and October of the same year for the sum of $998.47. In both causes of action it is alleged that payment was demanded and refused, except the payment of $1,000 on the first cause of action.

The defendant answered, admitting the execution and delivery of the trade acceptance and purchase of the goods, and also the refusal to pay for the reason thereinafter stated. Plaintiff filed a general demurrer to the affirmative matter in the answer, and the demurrer was sustained. Defendant then filed an amended answer and counterclaim which was also demurred to by plaintiff, and the demurrer sustained, after which defendant proposed certain amendments to its answer and counterclaim, but the proposed amendments were rejected. Defendant elected to stand upon its answer whereupon judgment was entered for plaintiff on the pleadings for the amounts prayed for in the complaint.

The principal question to be determined is, Did the amended answer and counterclaim state facts sufficient to constitute a defense to plaintiff's action? In the foregoing statement, for the sake of brevity, we have omitted many

details which, so far as may be necessary, will be supplied in the course of this opinion.

After admitting the purchase of the goods as alleged in the complant, but denying that the trade acceptance was given for value, defendant for further answer and counterclaim, among other allegations, alleged certain matter which it claims to be warranties and breaches thereof, as follows:

"(3)   Defendant further alleges that the said plaintiff, by and through its duly authorized agent, in order to induce the said defendant to purchase from said plaintiff the goods, wares, and merchandise mentioned in said amended complaint and consisting of vapor stoves, heaters, and ovens, warranted and represented to this defendant that said stoves, heaters, and ovens were first class and would give first-class satisfaction; that said defendant could not recommend them too highly; that the said plaintiff would stand by any recommendation concerning said stoves, heaters, and ovens as to their being first class; that said stoves, heaters, and ovens were the best and finest oil stoves on the market; that anybody with ordinary intelligence could operate them successfully; that said stoves, heaters, and ovens will sell like hot cakes; that said stoves, heaters, and ovens are far superior to an ordinary range coal stove for cooking and baking; that these stoves, heaters, and ovens are one of the biggest drawing cards that the Weeter Lumber Company ever had; that these stoves will be sold and the said defendant will have to have another car before the season is over.

"(4)   That relying upon said representations, warranties, and statements, and believing the same to be true, the said defendant was thereby induced to purchase said stoves, heaters, and ovens from said plaintiff; that notwithstanding the fact that the agent of said plaintiff knew that said defendant was purchasing said stoves, heaters, and ovens to resell to its customers at a profit and knew that said defendant had no knowledge or previous experience of the character or kind of said stoves, heaters, and ovens, the said representations and warranties of plaintiff were untrue in every particular and known to be untrue by said plaintiff at the time they were made; that the said stoves, heaters, and ovens proved to be utterly unfit for the purposes for which they were bought, and because of such unfitness the defendant has been compelled to take back a number of said stoves, heaters, and ovens which said defendant had sold to its customers, and that it now has on hand at least 102 of said stoves, heaters, and ovens which said defendant is unable to sell because of their unfitness for the purposes for which they were warranted; and that the said stoves, heaters, and ovens are of no value to the said defendant; and that by reason of the

representations and warranties made by said plaintiff which in-
duced said defendant to purchase said stoves, heaters, and ovens
and of the falsity of the same the said defendant has suffered dam-
ages in the sum of $8,216."

Defendant, as a further answer and counterclaim, alleged
certain other matter as promises and stipulations on the
part of plaintiff to induce defendant to purchase the goods.
The promises and stipulations are alleged as follows:

"(2)   Defendant further alleges that at the time that said con-
tract of sale by the plaintiff to the defendant and as a consideration
for the purchase of said stoves, ovens, and heaters by said defend-
ant from said plaintiff, the said plaintiff promised and agreed with
said defendant that the said agent making said sale for and on be-
half of said plaintiff to said defendant that 'he (the said agent)
would make as many demonstrations of said stoves, heaters, and
ovens to prospective purchasers as would be necessary to sell all
of said stoves, heaters and ovens during the season of 1920 *and that
he (the said agent) would aid and assist said defendant to sell all
of said stoves, heaters, and ovens during the season of 1920*, and that,
relying upon said promise, undertaking, and agreement so made by
said agent for and on behalf of said plaintiff, this defendant placed
said order for said stoves, heaters, and ovens mentioned in the first
and second causes of action in plaintiff's amended complaint and pur-
chased the' same in order to resell to its customers; that notwith-
standing said promises and agreements on the part of said plaintiff
it has failed to make any demonstrations of the fitness of said
stoves, heaters, and ovens for the purposes for which they were
intended and so purchased, save and except only two; *that it has
failed and refused to make the necessary demonstrations to pro-
spective purchasers to sell said stoves, heaters, and ovens, and failed
and refused to further aid said. defendant to sell said stoves, heaters,
and ovens, and in consequence of said failure on the part of said
plaintiff to carry out its said promises and agreements the said de-
fendant has been unable to sell said stoves, heaters, and ovens, and
it now has on its hands 143 of said stoves, heaters, and ovens which
it cannot sell, even though it has used every effort so to do,* which
said heaters, stoves, and ovens are in the warehouse of said defend-
ant at Price, Utah, and this defendant is willing, ready, and able to
return the same to said plaintiff, and hereby offers to return said
heaters, ovens, and stoves to said plaintiff.

"(3)   That because of the failure and refusal of said plaintiff
to keep and perform its promises as herein alleged the said defend-
ant has suffered damages in the sum of $8,216.

"For a further answer to the third and fourth paragraphs as
contained in the first cause of action of plaintiff's amended com-

Appeal from Seventh District

plaint this defendant alleges that it made and executed to said plaintiff the said trade acceptance mentioned in said paragraphs upon the promise and representation that the said plaintiff *would have its agent in Price, Utah, in July following, and as many other times as were necessary to make demonstrations of said stoves, heaters, and ovens in order to sell the same, and that said agent would aid and assist said defendant in the sale of said stoves, heaters, and ovens,* and relying upon said promises, agreements, and representations made by said plaintiff, the said defendant executed and delivered to said plaintiff said trade acceptance and not otherwise; *that said plaintiff failed and refused to perform said promise and agreement as hereinbefore alleged.*"

For convenience in making reference we have italicized certain parts of the alleged promises and stipulations which in our opinion are of controlling importance.

As far as concerns the alleged warranties in the first paragraph above quoted, we are constrained to adopt the view of respondent that they were merely "dealer's talk" and not warranties enforceable either as a defense or as an independent cause of action. For a dealer to say that the article he offers for sale "will sell like hot cakes" may have a tendency to induce an ardent lover of hot cakes to make an improvident purchase, but it affords him no grounds of action or defense if the statement proves to be false. This proposition is amply supported by the authorities relied on by respondent. 35 Cyc. 71; *Hurley* v. *Wilky,* 18 Ariz. 45, 156 Pac. 83; *Johnson* v. *Walker-Plath Motor Co.,* 68 Colo. 160, 187 Pac. 1029; *Elgin* v. *Synder,* 160 Or. 297, 118 Pac. 280.

In Cyc., supra it is said:

"Commendatory expressions and extravagant statements such as men commonly use to puff their wares and induce others to enter into bargains are not deemed to be representations of fact."

A careful examination of each and every statement relied on as a warranty in the quoted paragraph last referred to clearly demonstrates that they are all of the same type and belong to the "hot cakes" class. This conclusion disposes of the question relating to the alleged warranties in the paragraphs of the answer under present consideration.

The next question is the principal question in the case,

and is not so easily determined. It is alleged in defendant's further answer and counterclaim, above quoted, that plaintiff promised that its agent would assist defendant to sell all of said stoves, heaters, and ovens during the season of 1920, and that, relying on said promise, defendant purchased the goods. It is further alleged that plaintiff failed and refused to perform said promise and because of said failure defendant was unable to sell the goods, to its damage in the sum of $8,216. The plaintiff had the undoubted right to make this promise as an inducement to defendant to purchase the goods in question, and the defendant had the right to demand said service as a substantial part of the consideration moving it to make the purchase. In Williston on Sales, § 7, it is said:

"As in every other kind of contract, so in a contract to sell there may be inserted such conditions as the parties agree upon.  *  *  * Though the property is transferred by a sale, obligations may be still outstanding and unperformed by the seller, as an obligation to do work upon the goods or an obligation to deliver them, and such obligations like other contractual obligations may be conditional either by agreement of the parties or by implication of law."

The answer and counterclaim of defendant make it reasonably plain that plaintiff's promise to assist in the sale of the goods was one of the considerations which induced defendant to make the purchase. Upon what principle then, compatible with even-handed justice, should plaintiff be permitted to withhold a substantial part of the consideration which induced defendant to purchase the goods, and at the same time ask a court of justice to compel defendant to pay the price?

There is, however one feature of defendant's contention with which we cannot agree. We do not regard the promise of plaintiff to assist in selling the goods as a condition precedent to plantiff's right of recovery. The very nature of the transaction repels the idea. The trade acceptance was given in May, 1920, and became due and payable in August of the same year. Under the allegations of the counterclaim the plaintiff had the entire year in which to perform its promise. So that it is as plain as language can

make it that defendant's obligation to pay for the goods matured before the time expired within which plaintiff was required to discharge its obligation. If plaintiff, in August, 1920, after the trade acceptance became due, had elected to sue the defendant at once, defendant would not have been permitted to defend on the grounds set up in its counterclaim, for it would have appeared upon the face of the pleading that plaintiff had four months remaining within which to perform its promise. Here, then, is a typical case coming within the doctrine enunciated by Williston, supra, in which, although the property was transferred by a sale, still there was an "obligation outstanding and unperformed by the seller." As we read the authorities the remedy in such cases is not a rescission of the sale but an independent action for damages, or, in this jurisdiction, by a counterclaim as was attempted by the defendant in the case at bar. The following cases are sufficiently analogous to illustrate the principle: *Young Bros. Mach Co.* v. *Young et al.*, 111 Mich. 118, 69 N. W. 152; *Brown* v. *Ellis*, 103 Ky. 303, 45 S. W. 94; *Prairie Farmer Co.* v. *Taylor*, 69 Ill. 440, 18 Am. Rep. 621; *Springfield Seed Co.* v. *Walt*, 94 Mo. App. 76, 67 S. W. 938.

In *Young Bros. Mach. Co.* v. *Young et al.*, supra, the headnote states the nature of the case and the holding of the court:

"The seller of a machine agreed to give the buyers a satisfactory 'letter or bond' to indemnify them against interference by a certain company which claimed the machine was an infringement on its patents. *Held,* in an action for the price, that where it appeared that defendants had used the machine several months, it was too late for them to insist on such bond as a condition precedent to their liability, and they should be limited to the right to recoup such damages as they had sustained by reason of plaintiff's failure to give it."

In *Springfield Seed Co.* v. *Walt*, supra, the first headnote reflects the opinion of the court:

"Stipulation in a contract of sale of seeds by plaintiff to defendant for an exclusive market for defendant is independent of defendant's undertaking to pay for the seeds; so that plaintiff does not, as a condition of recovery, have to prove that defendant had

an exclusive market; but defendant may merely sue for or counterclaim for such damages as he may prove because plaintiff encroached on such market."

In *Brown* v. *Ellis,* supra, a vendor of horses represented to the buyer that the horses were of such pedigree as to entitle them to registry, and promised to procure certificates therefor. The vendor took immediate possession of the horses and for more than a year used them as his own, with no attempt to rescind for failure of the vendor to furnish the certificates. The court held that such representation by the seller was not a condition precedent to plaintiff's right of recovery. In the course of the opinion (103 Ky. at page 305, 45 S. W. at page 95), of the report, the court says:

"The court in its instructions treated the condition precedent as a mere breach of warranty which could be compensated for by damages."

The judgment of the trial court was affirmed.

In *Prairie Farmer Co.* v. *Taylor,* 69 Ill. 440, 18 Am. Rep. 621, we quote the headnote, which reads:

"Plaintiffs agreed to set up a printing press in defendant's office, defendant, a corporation, to have thirty days thereafter to determine whether or not it would keep the same, for a sum specified to be paid at certain dates. Plaintiff also agreed to keep the press in order permanently, without charge. *Held,* that the agreement to keep permanently in order was independent, and not a condition precedent to payment, and that by keeping the press thirty days without electing to return the same, rendered defendant liable for the purchase price."

On page 444 of 69 Ill. on page 624 of 18 Am. Rep. the court says:

"No doubt, in the present action, appellant could have availed of its privilege of recoupment, and have such damages as it had heretofore sustained deducted from the contract price."

The foregoing cases also amply support the proposition that defendant has a remedy by counterclaim for such damages as it may have sustained on account of plaintiff's failure to assist in selling the goods. In Benjamin on Sales (1st Ed.) § 564, the rule is stated thus:

"Although a man may refuse to perform his promise till the

other party has complied with a condition precedent, yet if he has received and accepted a substantial part of that which was to be performed in his favor, *the condition precedent changes its character*, and *becomes a warranty or independent agreement*, affording no defense to an action, but giving right to a counterclaim for damages. The reason is that it would be unjust under such circumstances, that a party who has received a part of the consideration for which he bargained, should keep it and pay nothing, because he did not receive the *whole*. The law, therefore, obliges him to perform his part of the agreement and leaves him to his action of or counterclaim for damages against the other side, for the imperfect performance of the condition."

The court in *Brown* v. *Ellis,* supra, quotes this rule with approval from the author's second edition, which is not available to us.

In *Simpson* v. *Cram,* 149 Mich. 352, 110 N. W. 1081, cited by defendant, it was held by the court that the failure of the seller to furnish help to sell at retail certain quantities of "Acme Food," according to the terms of the contract of sale, entitled the purchaser to recoup the damages thereby sustained, in an action by the seller for the purchase price.

Defendant calls our attention to other cases more or less illuminating upon the question under review, but most of them are cases in which the promises or covenants were held to be either conditions precedent to a right of recovery or warranties of quality. They are, however, of sufficient importance to justify a reference to them in this connection. *Knight* v. *New England Worsted Co.,* 2 Cush. (Mass.) 271; *Berlin* v. *Miller,* 59 Wash. 572, 110 Pac. 422; *National Cable & Mfg. Co.* v. *Filbert,* 31 S. D. 244, 140 N. W. 741, 45 L. R. A. (N. S.) 258; *Cadwell* v. *Blake,* 6 Gray (72 Mass.) 402; *Guaranty Co.* v. *Trust Co.,* 136 Md. 417, 110 Atl. 860; *Newton* v. *Chemcraft,* 26 Ga. App. 363, 106 S. E. 194; *Bixter* v. *Dolieve* (Tex. Civ. App.) 220 S. W. 148; *Neal* v. *Tobacco Co.,* 142 Ark. 505, 219 S. W. 326.

Respondent refers to no authority contravening the doctrine of these cases, nor do we believe they are in conflict with any well-considered case. We are therefore driven to the conclusion that defendant's answer and counterclaim stated grounds for a cross-demand against the plaintiff, and

that the demurrer thereto should have been overruled unless the ruling of the court was justified by the provisions of Comp. Laws 1917, § 5158, which reads:

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damags or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

Respondent makes no reference to this provision of the "Uniform Sales Act," but in view of the circumstances of the instant case the writer is of opinion that the provision has an important bearing on the question to be determined, and for that reason should receive attention.

It appears in the case that this action was not commenced by the plaintiff until several months had elapsed after the expiration of the time within which plaintiff should have fulfilled its promise of assisting defendant to sell the goods. The amended answer and counterclaim to which the court sustained the demurrer does not allege that notice was given to the plaintiff on its failure to perform or its breach of the promises made in the contract of sale, and the question therefore arises, in view of the section last quoted, did the amended answer and counterclaim state a cause of action or defense without an allegation that the notice required by the statute had been given? We do not deem it necessary to decide that question, and hesitate to do so, for the reason that its effect was not made the subject of controversy between the parties. If it be a fact that the counterclaim was fatally defective in not alleging notice to plaintiff that it had breached its promise, then we are of opinion the court committed prejudicial error in refusing to allow defendant to add to his counterclaim the following proposed amendment:

"Defendant further alleges that at divers times and within a reasonable time after the discovery of the failure of the plaintiff to keep and perform the promises hereinbefore alleged and of the breach of the representations and warranties as hereinbefore stated,

that it gave notice to said plaintiff of its failure to keep and perform the promises made by said plaintiff and of the fact that said representations and warranties were untrue."

The proposed amendment was offered on the same day and very soon after the demurrer to defendant's counterclaim was sustained. What reason the court had for refusing to permit the amendment does not appear. Another amendment offered at the same time was rejected for the reason, as stated by the court, that it had been alleged in a former pleading and afterwards abandoned.

Whatever may be the correct conclusion as to whether the amended counterclaim stated a cause of action without the allegation that notice was given to plaintiff of the breach of its promise, we are firm in our convictions that with the amendment alleging such notice the counterclaim stated a cause of action for such damages as defendant had sustained. It was therefore prejudicial error to refuse to allow the amendment and enter judgment on the pleadings.

In *Hancock* v. *Luke*, 46 Utah, 26, 148 Pac. 452, this court in discussing at considerable length the question of judgment entered on the pleadings, and the liberality with which amendments should be allowed. At page 33 of the report the court says:

"Motions for judgments on the pleadings are, however, not favored by the courts, and upon such a motion the pleadings will be construed with great liberality in favor of the party whose pleadings are assailed"—citing many cases.

At page 38 of 46 Utah, at page 457 of 148 Pac. the court, quoting from Bliss on Code Pleading (3d Ed.) § 429, says:

"Courts should be liberal in allowing amendments to the end that cases may be fully and fairly presented on their merits."

Further on, the court quotes from the same author, the following:

"The power of amendment of pleadings is great under the Code. The real limitation seems to be that the amendment shall not bring a new cause of action."

The court then quotes a pertinent excerpt from *Tood* v.

*Bettingen,* 102 Minn. 260, 113 N. W. 906, 18 L. R. A. (N. S.) 263, and then proceeds:

"We * * * see no reason whatever why the defendants in this case should be denied the right of amendment when the exercise of that right is a matter of daily occurrence in our courts of justice."

Much that was said in the *Hancock Case* is applicable to the questions raised in the case at bar.

Before concluding, it may be well to state that while defendant's counterclaim, amended as requested by defendant, states a cause of action against the plaintiff, as against a general demurrer, it would not stand against a special demurrer as to the amount of damages. For this reason it is possible that both plaintiff and defendant may desire to further amend their pleadings.

It is therefore ordered that the judgment be reversed, and the cause remanded, with directions to the trial court to permit the parties, upon their request, to amend their pleadings, to the end that the case may be tried on its merits in accordance with the views expressed herein; costs to be taxed against respondent.

WEBER, C. J., and GIDEON, FRICK, and CHERRY, JJ., concur.