## TETON AUTO CO. v. NORTHWESTERN PURE BRED SOW CO., ET AL.

(No. 1901; October 1, 1935; 49 Pac. (2d) 643)

For the defendant and appellant there was a brief by *A. C. Allen,* of Riverton.

For the plaintiff and respondent, the cause was submitted on the brief of *George H. Paul,* of Riverton.

RINER, Justice.

This case, brought here by direct appeal from a judgment of the district court of Fremont County, arose in connection with facts which briefly stated are these:

On the 23rd day of November, 1928, at Riverton, Wyoming, E. P. Parks, one of the defendants below, executed and gave to Northwestern Pure Bred Sow Company, hereinafter usually referred to as the "vendor" and being the other defendant in the litigation, his promissory note, whereby he agreed to pay to it the sum of $375.00, with interest at ten per centum per annum, on November 23, 1929, and costs of collection, including attorney's fees if not paid at maturity. This note, after reciting that the consideration of the obligation was that the vendor had delivered and agreed to sell to Parks "fifteen pure bred Duroc Sows and offspring," and that "the title and ownership of the said property shall be and remain" in the vendor "until full payment is made of the amount above set forth, with interest thereon," among many other pro-

visions contained the following: "The undersigned agrees to pay the taxes on the above described property." Said note concluded with the statement that, "I or we expressly waive against this agreement all exemptions, homestead laws, and any claims for damages of whatsoever nature."

Additionally the parties aforesaid, at the same time and place, executed another contract evidencing other mutual promises relative to the sale of the animals above mentioned. The defendant Parks thereby agreed to make the purchase and pay $85.00 for each of the gilts, $190.00 to be paid down at the time the contract was signed, and cash or bankable note to be delivered for the balance due. The note hereinbefore described is one of those delivered pursuant to this agreement, and was sold by the vendor, for a valuable consideration, shortly after its execution, to the Teton Auto Company, plaintiff below and respondent here. This separate sales contract for the hogs contained as promises on behalf of the vendor, among others, the following:

"4. Northwestern Pure Bred Sow Company agrees to furnish an experienced fieldman who will advise the purchaser on the best methods of breeding, feeding and the general care of purebred swine.

"5. The Northwestern Pure Bred Sow Company agrees to buy from the signer of this contract all standard gilts weighing not less than 135 pounds, and not to exceed six months of age from at least the first two litters, of all sows covered by this order, and to pay therefor the sum of $25.00 per head providing said gilts are double treated for cholera by a veterinarian qualified to act, provided also that all gilts covered by this order are sired by a boar approved by the Northwestern Pure Bred Sow Company, and accompanied by a Certificate of Registration."

Parks made the down payment, gave the notes and received and kept the animals. By November 1, 1929,

he had raised 153 hogs, which were ready for disposal, and soon thereafter sold and received the money for them, on the open market. None of the animals thus sold by Parks were ever "double treated for cholera by a veterinarian." The vendor never furnished a "fieldman" to advise Parks relative to caring for the swine.

The note aforesaid not having been paid at maturity, plaintiff instituted suit against Parks and the vendor to collect the amount claimed to be due thereon. Personal service of process could not be made on the vendor in Fremont County, and the case proceeded to its ultimate result against Parks. As a defense and also by way of counterclaim, he alleged that the vendor had failed to perform its covenants to furnish a fieldman and to buy the hogs, as it had agreed. Trial was had to the court without a jury, and the judgment now under review was rendered in plaintiff's favor, findings of fact and conclusions of law being made by the court pursuant to request of the parties.

It is argued for appellant, as the trial court in fact decided, that the note in suit is non-negotiable in character, because of the incorporation therein of the clause requiring the maker thereof to pay the taxes on the hogs sold, as detailed above. There is substantial authority in support of that position relative to the matter. See in connection therewith: Peterson et al. v. Metropolitan Life Insurance Company, (D. C.) 19 Fed. (2d) 74; Bright v. Offield, 81 Wash. 442, 143 Pac. 159; Coolidge & McClaine v. Saltmarsh et al., 96 Wash. 541, 165 Pac. 508; Hubbard v. Robert B. Wallace Co., Inc., 201 Iowa 1143, 208 N. W. 730; Mackey v. Dobrucki, 116 Conn. 666, 166 Atl. 393; Mechanics Bank v. Johnson, 104 Conn. 696, 134 Atl. 231; Schumacher v. Miller, 111 Conn. 568, 150 Atl. 524; Persky v. Bank of America Nat'l. Ass'n., 261 N. Y. 212, 185 N. E. 77; 8 C. J. 146. However, in view of the evi-

dence in the record before us, we deem it unnecessary to decide the point, and shall assume merely for the purposes of this case that the note aforesaid is nonnegotiable and establishes under that assumption, of course, the right of the maker to interpose the defenses he might have as against the original payee or vendor of the hogs.

Appellant asserts a counterclaim because the vendor failed to comply with the provisions of subdivision "5" quoted verbatim, supra, in that after notice sent it to that effect and he, Parks, was ready to deliver the hogs, said vendor never purchased the animals as it had agreed to do, and he accordingly had to sell them on the market for less than he would have received under the contract clause already recited. But the difficulty arising in this connection is that the trial court found—and a careful examination on our part of the record leads us to think the findings were correct and could not have been otherwise—:

"5th. There is no evidence in the record that the defendant, E. P. Parks, at any time had any standard gilts weighing not less than 135 pounds and not exceeding six months of age from the first two litters of sows covered by the contract, and the evidence of the defendant, Parks, was to the effect that he never at any time had any gilts which were double treated for cholera by a veterinarian qualified to act.

"6th. The evidence wholly fails to show that the defendant Parks had at any time put himself in position to carry out the terms and conditions of the contract, Exhibit 'A,' (the additional contract of sale between the parties previously herein referred to), or that he suffered any damage solely by reason of the failure of the defendant Purebred Sow Co. to carry out any provisions of the contract required to be performed by it.

"7th. That the defendant, E. P. Parks, never at any time demanded of the defendant Purebred Sow Co. or its assignee, Teton Auto Company, the performance of the contract upon their part."

It is perfectly plain from the phraseology of subdivision "5," supra, of the sales contract that before Parks could rightfully demand that the vendor buy the hogs he had for sale in November, 1929, at the price fixed by the contract, he himself must have done the things he promised in that subdivision he would do, viz., have the animals double treated for cholera by a qualified veterinarian, said animals being also of the designated weight and age. As the court found, there is no evidence that he complied with these requirements. As a matter of fact, he himself admitted on the witness stand that he had not complied with the requirement as to treatment of the animals for cholera.

It seems to be claimed for appellant that plaintiff should not have been permitted to recover because the vendor violated the terms of the contract contained in subdivision "4" thereof, also hereinbefore quoted verbatim, in that it failed to furnish a "fieldman" to advise Parks concerning the general care of purebred swine. It was neither pleaded nor proven by Parks that he had been in any way damaged by such failure on the vendor's part. As we have seen, the trial court so found, and as already intimated, with that finding scrutinized in the light of the record, no fault can be found that we can see. The record in the case also discloses no complaint on the part of Parks that the vendor had failed to carry out the promise last above mentioned until suit to recover on the note had been commenced.

It is apparent from what has been said that each of the parties to the contract of sale undertook to do certain things. If these requirements are necessarily to be regarded as concurrent and dependent, one party thereto could not maintain an action against the other for breach of the contract without proving a performance or a tender of performance of the contract on his part. If, however, the covenants or stipulations

therein must be construed as independent of each other, an actual performance of the contract by the other party would not be needful before an action could be maintained for breach of performance of the agreement on the part of the other. Where the promises are independent both sides have a remedy for damages. The language of the contract fairly construed must determine to which of these classes the promise or covenant belongs.

In the case at bar, the agreement by Parks to pay the purchase price of the hogs was in no way conditioned upon the fact that the vendor should furnish an experienced fieldman, who would give advice as to the care of the animals sold. The agreement to do that was wholly independent of Parks' promise to pay for them, which itself was dependent upon the delivery of the animals to him. Indeed, no definite time appears to have been fixed for the performance by the vendor of this promise by it. The fact may well be that Parks regarded the vendor's obligation in this respect as quite valueless to him, either because he was well acquainted with the matter of caring for purebred swine and needed no advice or because he did not care to be bothered with another's views on the subject. At any rate he made no complaint whatsoever regarding the omission until suit was brought for the purchase price, although his dissatisfaction and protest could readily enough have been voiced by a letter or telegram to the vendor.

Where the plaintiff sold articles to the defendant to be paid for in thirty days, it was held that performance of its agreement in the contract of sale to run a certain amount of advertising of the articles so sold in a paper within a year, was not a condition to its right to sue for the price, and in Vio Chemical Co. v. Studholme, 103 N. Y. Supp. 463, affirmed in 106 N. Y. Supp. 1148, the Court said:

"Plaintiff rests on proof of delivery of goods and defendant's failure to pay therefor. These facts established, the plaintiff is entitled to recover. The performance by the plaintiff of its agreement to run 500 to 1000 inches of advertising in the Daily Times within one year, etc., was not and could not be a condition precedent to liability of defendant on his promise to pay for the goods within 30 days from date of shipment. Defendant's promise to pay is absolute and·dependent only on the receipt of goods as ordered.

" 'Where a time is definitely fixed for the performance of one promise, and no date assigned for the performance by the other—if A. and X. agree that A. will buy X.'s property and pay for it on a certain day, and no day is fixed for the conveyance by X., then X. may sue for the money, in default of payment on the day named, and need not aver that he has conveyed or offered to convey the lands.' Huffcut's Anson on Contract (1st Am. Ed.) 362."

In Starr v. Davis, 105 Calif. App. 632, 288 Pac. 706, a contention advanced by the appealing party in that case rather closely resembles that put forward on behalf of Parks here. Rejecting it the court said:

"Appellant's first contention is that upon proof of the violation by plaintiff of the covenant to refrain from competition, the liability of defendant upon the note then and there ceased. Appellant's theory is that the agreement of sale and the note given as the balance of the purchase price was a single and inseparable transaction, and that they were mutual dependent covenants, forming one contract, the consideration of which went to the whole thereof, and the breach of the material covenant by plaintiff in hindering the good will of the business bought, was such a failure of consideration as to excuse the performance of payment of the note by appellant. Appellant contents himself with the bare statement of his contention without citation of applicable authority, but when he comes to another point concerning the relationship of the covenant to assume the advertising contract, he then cites general principles that he contends should control, and then argues both ways. It is our holding that this contention is not well grounded.

"Taking up the contention of appellant at the outset, in a broad general way, the effect of upholding it would be to say that as a penalty for plaintiff's breach, defendant might keep the business without paying therefor. In other words, that if 'A' purchased a business from 'B,' agreeing to pay therefor $10,000, and paying at the time of agreement merely $100 with promissory notes for the balance, and 'B' had agreed not to carry on a similar business within legally permissible limits, then upon 'B's' slightest breach of this covenant 'A' should retain the business and be absolved from the obligation evidenced by the notes. Such is not the law."

See also as of similar purport: Floyd & Newland v. Serenado Mfg. Co., 196 Iowa 6, 193 N. W. 581; Detroit Vapor Stove Co. v. J. C. Weeter Lumber Co., 61 Utah 503, 215 Pac. 995, 29 A. L. R. 659.

In Hayes & Planter Co. v. Lott et al., 190 Ill. App. 538, where the contract contained an agreement by the buyer to pay for goods sold and delivered and likewise a promise by the seller to assign to the buyer certain territory for a trade season, it was decided that the agreement to pay for the goods was an independent agreement and that the promise concerning territory assignment was not a condition precedent to the agreement to pay for the goods.

Under the principles announced by these authorities it is evident that Parks, having failed to plead and prove any damages suffered by him on account of the vendor's failure to keep its promise, may not defeat the instant action for the purchase price of the hogs.

Counsel for the parties seem to have overlooked the effect of section 98-909 Wyoming Revised Statutes, 1931, as regards this case, that section reading:

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after

acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows or ought to know of such breach, the seller shall not be liable therefor."

As a part of the Uniform Sales Act in Force in many states of the Union this section has been frequently construed by the courts.

Mr. Williston in the first edition of his work on Sales (Section 484) says that, "the latter part of" this section "imposes a qualification of the buyer's rights, which is justified by business practice and by some decisions, as well as by the law on the Continent of Europe."

After quoting the section, its purpose is thus outlined in Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn. 551, 249 S. W. 984:

"The purpose of this section, indeed, seems apparent, viz. to prevent the buyer from interposing belated claims for damages (too often a mere afterthought) as an offset to a suit begun by the seller for the purchase price.

"As stated in the case of Regina Co. v. Gately Furniture Co. (Sup. 1915), 154 N. Y. Supp., 888, 889, affirmed (1916) 171 App. Div., 817, 157 N. Y. Supp., 746:

" 'It is very evident that the purpose of this statute is to prevent the very condition that seems to exist here, viz. the buyer retaining the goods and using them, failing to give any notice of any breach of the original agreement to the seller until it has been sued for the purchase price, and then setting up affirmatively a defense by which it is sought to wipe out all of the original purchase price and demand an affirmative judgment for an additional sum against the plaintiff.'

"In the case of Maggioros v. Edson Bros. (Sup. March 1917), 164 N. Y. Supp. 377, 379, it was said:

" 'This provision is intended for the protection of the seller. The design of it is to give the seller an early

notice of the alleged defects. . . . The purpose of the statute was to give the seller notice, before suit, and not by suit.' "

In further explanation of the operation of this statute the Federal Circuit Court of Appeals for the Second Circuit, in American Mfg. Co. v. United States Shipping Board etc. Corporation, 7 Fed. (2d) 565, said:

"It is now settled by statute (section 130, Personal Property Law N. Y. (Consol. Laws, c. 41) that acceptance of the goods bars any recovery 'for breach of any promise * * * in the contract to sell or the sale,' unless the buyer shall 'give notice to the seller of the breach * * * within a reasonable time after the buyer knows * * * of such breach.' Delay in delivery, of course, is a breach, and the plaintiff was obliged to give notice within a reasonable time after October 20, 1920. It did nothing till February 19, 1921, and four months is more than a reasonable time, as the District Court correctly held.

"The plaintiff replies that the buyer is not required to give notice of what the seller already knows, but this confuses two quite different things. The notice 'of the breach' required is not of the facts, which the seller presumably knows quite as well, if not better than, the buyer, but of buyer's claim that they constitute a breach. The purpose of the notice is to advise the seller that he must meet a claim for damages, as to which, rightly or wrongly, the law requires that he shall have early warning.

"The Court of Appeals of New York, in Henderson, etc. Co. v. P. K. Wilson & Son, 235 N. Y. 489, 139 N. E. 583, has so ruled under this section of the act, and there seems to us no room for doubt."

So in Truslow & Fulle, Inc. v. Diamond Bottling Corporation, 112 Conn. 181, 151 At. 492, 71 A. L. R. 1142, the statute was interpreted in this wise:

"The statute provides that the acceptance of goods by a buyer shall not discharge the seller from liability in damages for breach of any promise or warranty except as follows: 'But if, after acceptance of the

goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows or ought to know of such breach, the seller shall not be liable therefor.' General Statutes, § 4669. The defendant cannot then recover unless within a reasonable time it gave notice to the plaintiff of 'the breach of * * * warranty.' The purpose of the provision requiring such a notice is clearly to give the seller timely information that the buyer proposes to look to him for damages for the breach, that the former may govern his conduct accordingly."

Referring to this section, the court in Marmet Coal Co. v. People's Coal Co., 226 Fed. 646, (C. C. A., 6th Circuit) declared: "Again, unless defendant gave notice of the alleged breach within a reasonable time after it knew of it, defendant has no right of action and no defense. Ohio Code, § 8429."

In African-American Importing Co., Inc. v. Werbelovsky, 204 N. Y. Supp. 197, affirmed in 207 N. Y. Supp. 804, it appeared that the buyer sought damages for breach caused by the seller's alleged breach of a promise in the sales contract to pack the glass for export. The glass was shipped in 1918, but no notice of claim was given until 1921. Holding that this notice was not given within a reasonable time the court also said:

"Contention that section 130 of the Personal Property Law (as added by Laws 1911, c. 571) applies only to technical warranties, and not to a collateral engagement to pack, is unsound. It relates to 'breach of any promise or warranty in the contract.' The section is intended to end the former distinctions between express and implied warranties. To adopt the similar refinement here urged would be retrogression in sales law. 'Business practice,' the basis of the statute (Williston on Sales, § 484), and the explicit language of section 130 require the buyer, after acceptance of the goods, to give reasonable notice of breach of any promise in the contract."

Mr. Williston, in the second edition of his work already mentioned (§ 484a) says that, "It should be noted that the section is applicable not only to defects of quality but to breach of any promise or warranty, as, for instance, delay in time."

As indicating a similar view with that of the last two cited authorities, see Detroit Vapor Stove Co. v. J. C. Weeter Lumber Co., supra.

The defendant Parks manifestly made no attempt to comply with the requirements dictated by the Legislature concerning this matter. This section of our statutes governing contracts of the nature here under consideration, the principles announced by the authorities we have cited as construing the law, and the facts appearing in the record, as hereinbefore detailed, supplemental to what has already been said concerning the independent nature of the covenants and promises of the parties to this litigation in the contract of sale they made, all establish conclusively in our judgment that the district court of Fremont County disposed of this case correctly, and its judgment should be accordingly affirmed.

*Affirmed.*

KIMBALL, Ch. J., and BLUME, J., concur.